1

2

3

4

5

6                       **UNITED STATES DISTRICT COURT**

7                            **DISTRICT OF NEVADA**

8   ALLSTATE PROPERTY and CASUALTY          )
    INSURANCE COMPANY,                        )
9                                             )
              Plaintiff,                      )
10                                            )          2:12-cv-1288-RCJ-PAL
          v.                                  )
11                                            )          **ORDER**
    KIARASH MIRKIA, POUPAK ZIAEI, and         )
12  DOES 1-10,                                )
                                              )
13            Defendants.                     )
    _____

14

15          Currently before the Court are a Motion to Dismiss, or in the Alternative, Motion to

16  Sever Claims for Bad Faith or in the Alternate Motion to Bifurcate and Stay Claims for Bad

17  Faith (#24) and a Motion to Dismiss (#25).

18                                **BACKGROUND**

19  **I.     Complaint**

20          In July 2012, Allstate Property and Casualty Insurance Company ("Allstate") filed a

21  complaint in this Court based on diversity jurisdiction against Kiarash Mirkia and Poupak Ziaei,

22  husband and wife.  (Compl. (#1) at 1-2). The complaint alleged the following. (*Id.* at 2).  On

23  December 5, 2011, Mirkia entered into a lease agreement with property owner, Ronell Curtis,

24  to rent property located at 68 Wildwing Court in Las Vegas, Nevada. (*Id.*).  The lease included

25  a "purchase option" which stated that "Tenant reserves the option to purchase the property

26  during the duration of the lease for $2,700,000 (or appraised value, whichever is less)." (*Id.*).

27  The lease indicated that Curtis would be filing for Chapter 11 bankruptcy and that all of Mirkia's

28  payments would be paid toward the loan already in default with Bank of America. (*Id.*).  On

    December 16, 2011, Curtis filed a voluntary petition for Chapter 11 bankruptcy. (*Id.*).  The

1  lease required Mirkia to obtain renter's insurance.  (*Id.* at 3).

2      The complaint alleged the following. (*Id.*).  Allstate issued Mirkia and Ziaei a

3  homeowner's policy from December 15, 2011 through December 15, 2012. (*Id.*).  The policy

4  included personal property limits of $1,038,104 and included extended coverage for scheduled

5  personal property with limits of $142,200 for "jewelry" and $46,900 for "jewelry-gem print."

6  (*Id.*).  In early December 2011, Mirkia and Ziaei contacted Allstate agent Walid Khuraibet to

7  procure a homeowner's policy to provide building and content coverage for 68 Wildwing Court.

8  (*Id.*).  Mirkia told Khuraibet "that he and his wife were going to own the new home and were

9  purchasing the home through private financing and that there would be no 'mortgagee' to be

10  named on the policy." (*Id.*).  Mirkia completed a policy application for a homeowner's policy

11  with additional coverage for scheduled personal property and signed the application in

12  Khuraibet's office on January 6, 2012. (*Id.*).  The application stated that "[t]o the best of my

13  knowledge the statements made on this application . . . are true . . . The Company may

14  recomputed the premium shown if the statements made herein are not true.  In the event of

15  any material misrepresentation or concealment made by me or with my knowledge in

16  connection with this application, the Company may deem this binder and any policy issued

17  pursuant to this application, void."  (*Id.* at 3-4).

18      The complaint alleged that, on January 10, 2012, Allstate made a physical inspection

19  of the property. (*Id.* at 4).  A field representative interviewed Mirkia who "represented himself

20  to be the 'owner' of the property, as opposed to a 'tenant' as evidenced from the report." (*Id.*).

21  Mirkia had denied that the property was "rented out" at any time and represented that he had

22  purchased the home in 2011 for approximately $2,600,000. (*Id.* ).  In reliance on Mirkia's false

23  representations concerning his home ownership, Allstate issued the homeowner's policy. (*Id.*).

24      The complaint alleged that, on March 1, 2012, Mirkia reported the theft of jewelry and

25  expensive sunglasses that had occurred on January 30, 2012, to Allstate. (*Id.* at 5).  Mirkia

26  and his wife had terminated their *au pair* after two weeks of employment and discovered the

27  theft an hour after the *au pair* had left the premises. (*Id.*).  On January 30th, Mirkia had

28  reported the theft to the Las Vegas Police Department. (*Id.*).  On March 10, 2012, Allstate had

2

1   taken Mirkia's examination under oath.  (*Id.*).  Mirkia had stated that "he was unsure whether

2   or not he had disclosed that he was in possession of the property as a tenant under a lease

3   with option to purchase prior to the loss versus representing that he had purchased the home

4   and was the owner of the home."  (*Id.*).  Based on its investigation, Allstate determined that

5   Mirkia had misrepresented and concealed the true facts and circumstances of his ownership

6   of the property at the time the policy was obtained and denied coverage under the policy for

7   the subject loss.  (*Id.*).

8        The complaint alleged two causes of action.  (*Id.* at 6-7).  In the first cause of action,

9   Allstate alleged rescission.  (*Id.* at 6).  Allstate alleged that it had issued the policy in reliance

10   upon false statements, factual misrepresentations, and omissions which were material and

11   had deceived Allstate into accepting the risk at a certain premium.  (*Id.*).  If Allstate had known

12   the true facts, it would not have issued the homeowner's policy or a renter's policy.  (*Id.*).  If

13   a renter's policy had been issued, it would have been issued on different terms with a lower

14   coverage limit for the jewelry at a different premium.  (*Id.*).  Allstate alleged it was entitled to

15   rescission of the policy *ab initio*.  (*Id.*).  Allstate alleged that it had no duty to indemnify Mirkia

16   and Ziaei under the policy for any claim including the January 30, 2012 theft claim.  (*Id.*).

17        In the second cause of action, Allstate sought declaratory relief regarding the amount

18   of damages to be recovered.  (*Id.* at 7).  Allstate alleged that, if the Court should determine

19   that coverage is owed to Mirkia and Ziaei under the policy for the theft claim, the Court should

20   determine the amount of the contractual damages recoverable.  (*Id.*).

21        Allstate attached the following exhibits to the complaint:  (a) the residential lease

22   agreement between Curtis and Mirkia; (b) the issued homeowner's policy between Allstate and

23   Mirkia; and (c) Mirkia's application for homeowner's policy with additional coverage for

24   scheduled personal property.  (Exhibits (#1-1, 1-2, 1-3)).

25   **II.    Counterclaim**

26        In November 2012, Mirkia and Ziaei filed an answer to the complaint, a counterclaim

27   against Allstate, and a third-party complaint against Walid Khuraibet and Legacy Agency, LLC.

28   (Answer (#16) at 1-8; Counterclaim (#16) at 9-26).  The counterclaim and third-party complaint

3

1   alleged the following. (Counterclaim (#16) at 9).   Khuraibet owned Legacy Agency, LLC

2   ("Legacy") and, at all times, Khuriabet had been acting within the course and scope of his

3   agency or employment status with Allstate and/or Legacy.  (*Id.*).  Allstate and/or Legacy was

4   vicariously liable for Khuraibet's conduct.  (*Id.*).  Khuraibet was the alter ego of Legacy.  (*Id.*

5   at 9-10).

6       The counterclaim and third-party complaint alleged the following.  (*Id.*).  Mirkia and

7   Ziaei, doctors, were long term Allstate customers and had first purchased insurance from

8   Allstate in Chicago, Illinois, 13 years ago. (*Id.* at 10).   Until recently, Mirkia and Ziaei had

9   maintained Allstate insurance policies for all of their insurable possessions, including home,

10  vehicles, and personal property.  (*Id.*).  Until recently, they had never made a claim with

11  Allstate.  (*Id.*).  Mirkia and Ziaei relocated to Nevada in 2008.  (*Id.*). They promptly contacted

12  a local Allstate agent to ensure that their possessions would be fully insured in their new home

13  state.  (*Id.*).  Mirkia and Ziaei initially worked with Jorge Chavez who transferred their account

14  to Allstate Agent Khuraibet.  (*Id.*).  Khuraibet brokered Mirkia and Ziaei's insurance accounts

15  for over three years. (*Id.*).  Later Khuraibet assisted Mirkia and Ziaei in insuring a new primary

16  residence in Nevada which they were "leasing to own."  (*Id.* at 11).  Mirkia and Ziaei provided

17  a copy of their lease to Khuraibet.  (*Id.*).  Joseph Yakubik, a third-party, was present in

18  Khuraibet's office when Mirkia presented Khuraibet a copy of the "lease to own" agreement.

19  (*Id.*).

20      The counterclaim alleged the following.  (*Id.*).  Mirkia and Ziaei had brought their jewelry

21  from Chicago to Las Vegas.  (*Id.*).  Their jewelry was already on their homeowner's policy in

22  Chicago but they wanted a separate policy to provide greater coverage for their jewelry.  (*Id.*).

23  Khuraibet completed, processed, updated, and submitted the application for Mirkia and Ziaei's

24  jewelry, including a special schedule, or personal property "floater" ensuring additional,

25  independent coverage for the jewelry.  (*Id.*).  Khuraibet "falsely indicated on the insurance

26  policy" that Mirkia and Ziaei "outright owned their home rather than leased to own it."  (*Id.*).

27  Khuraibet had actual knowledge that Mirkia and Ziaei leased to own their home because they

28  had provided him with the lease and because they were personal friends that knew each other

4

1   socially and professionally.  (*Id.*).  Allstate charged Mirkia and Ziaei $4,796 as a premium for

2   their personal property floater and $2,650.93 for their homeowner's insurance.  (*Id.*).  One set

3   of the jewelry was insured for $142,200 and the other set for $46,900.  (*Id.*).

4        The counterclaim alleged the following.  (*Id.*).  In January 2012, Mirkia and Ziaei had

5   hired an *au pair* through CulturalCare to assist in caring for their two small children.  (*Id.*).

6   After a short period of work, the *au pair* left Mirkia and Ziaei's employment and took some of

7   their jewelry with her.  (*Id.*).  Within an hour of the *au pair* leaving, Ziaei discovered the theft

8   and the couple called the police and filled out a report.  (*Id.* at 11-12).  The police attempted

9   to locate the *au pair* but she had left the country.  (*Id.* at 12).  After failing to locate the *au pair*,

10  even with the help of CulturalCare, Mirkia and Ziaei reported the theft of their jewelry and

11  made a claim with Khuraibet and Allstate.  (*Id.*).  Allstate implemented an investigation,

12  inspected Mirkia and Ziaei's house, and interviewed Mirkia and Ziaei separately for several

13  hours.  (*Id.*).  After several months of "investigation," Allstate informed Mirkia and Ziaei that it

14  was denying their claim "based on a purported misrepresentation on the doctors' insurance

15  policy and/or personal property floater."  (*Id.*).  Khuriabet misrepresented to Allstate that Mirkia

16  and Ziaei had not informed him that they lived in a home that they were leasing to own. (*Id.*).

17  Allstate sent a denial letter to Mirkia and Ziaei on July 19, 2012, and initiated this lawsuit on

18  the same day.  (*Id.*).

19       The counterclaim alleged nine causes of action.  (Counterclaim (#16) at 12-24).  In the

20  first cause of action, Mirkia and Ziaei alleged bad faith against Allstate.  (*Id.* at 12).  Mirkia and

21  Ziaei alleged that they had materially and/or fully complied with their obligations under the

22  policy and had made a valid claim for compensation for their stolen jewelry.  (*Id.* at 13).

23  Allstate unreasonably denied the claim and acted in bad faith by doing so.  (*Id.*).  Allstate

24  fabricated and/or credited the unjustified and unsubstantiated allegation that Mirkia and Ziaei

25  had failed to disclose the status of their home ownership in Nevada violating the implied

26  covenant of good faith and fair dealing.  (*Id.*).  Allstate was aware or should have been aware

27  that the misrepresentation–which Mirkia and Ziaei expressly disclaim–was immaterial and did

28  not meaningfully affect the valuation of the insured jewelry or Allstate's decision to underwrite

1   the jewelry.  (*Id.*).  Allstate acted in bad faith by falsely asserting that it would not have insured

2   Mirkia and Ziaei if it had known that they were only leasing to own their home rather than

3   owning it outright.  (*Id.*).  Allstate acted in bad faith when it failed to disclose the purpose of its

4   investigation and when it manipulated Mirkia and Ziaei "in an unguarded moment into assisting

5   Allstate in fabricating the falsehood about the doctors lying about the status of the ownership

6   of their home on their homeowners' insurance application."  (*Id.* at 14).

7       In the second cause of action, Mirkia and Ziaei alleged breach of contract against

8   Allstate, Khuraibet, and Legacy.  (*Id.* at 15).  Mirkia and Ziaei had fulfilled their obligations

9   under the contract and Allstate and/or Khuraibet had breached their obligations by failing to

10  properly complete, submit, and/or settle Mirkia and Ziaei's insurance applications, personal

11  property floater, and/or insurance claims.  (*Id.*).  Allstate and/or Legacy were vicariously liable

12  for Khuraibet's wrongful conduct.  (*Id.* at 16).

13      In the third cause of action, Mirkia and Ziaei alleged breach of the implied covenant of

14  good faith and fair dealing against Allstate, Khuraibet, and Legacy.  (*Id.*).  Allstate and

15  Khuraibet had breached the implied covenant of good faith and fair dealing by their failure to

16  properly complete, submit, and/or settle Mirkia and Ziaei's insurance applications, personal

17  property floater, and/or insurance claims in good faith.  (*Id.*).  Allstate and Legacy were

18  vicariously liable for Khuriabet's wrongful conduct.  (*Id.*).

19      In the fourth cause of action, Mirkia and Ziaei alleged unjust enrichment against

20  Allstate, Khuraibet, and Legacy.  (*Id.* at 17).  Allstate had been unjustly enriched by retaining

21  Mirkia and Ziaei's insurance premiums while simultaneously refusing to honor their insurance

22  claim for the stolen jewelry.  (*Id.*).  Khuraibet had been unjustly enriched by seeking and

23  retaining a commission for brokering Mirkia and Ziaei's insurance policies and floater while

24  simultaneously failing to competently or honestly complete their application for insurance and

25  floater, as well as, deliberating omitting or misrepresenting to Allstate the knowledge he had

26  received regarding their home ownership.  (*Id.*).  Allstate and Legacy were vicariously liable

27  for Khuriabet's wrongful conduct.  (*Id.*).

28      In the fifth cause of action, Mirkia and Ziaei alleged gross negligence against Allstate,

6

Khuraibet, and Legacy.  (*Id.* at 18).  Khuraibet owed Mirkia and Ziaei a duty of care as their insurance broker and represented that he would truthfully and accurately complete or update their insurance applications.  (*Id.*).  Mirkia gave Khuraibet a copy of the "leasing to own" agreement prior to submitting the insurance applications.  (*Id.*).  Khuraibet breached his duty of care by failing to accurately disclose Mirkia and Ziaei's home ownership status.  (*Id.*).  Even if Mirkia and Ziaei had inaccurately stated on their application that they had owned the home, which they deny, Khuriabet had a duty, based on his knowledge as an Allstate agent, to correct it before submitting it to Allstate or to immediately contact Allstate to correct his mistake.  (*Id.* at 19).  Allstate and Legacy were vicariously liable for Khuriabet's conduct.  (*Id.* at 20).

In the sixth cause of action, Mirkia and Ziaei alleged negligent misrepresentation against Allstate, Khuraibet, and Legacy.  (*Id.*).  In the course of a business transaction, Khuraibet supplied materially false information when he represented to Allstate that Mirkia and Ziaei were the outright owners of their home while simultaneously representing to Mirkia and Ziaei that he had faithfully represented their personal information to Allstate.  (*Id.* at 21).  Khuraibet also represented to Mirkia and Ziaei that their home ownership status was no bar to their application for the personal property floater for their jewelry.  (*Id.*).  Allstate and Legacy were vicariously liable for Khuriabet's conduct.  (*Id.*).

In the seventh cause of action, Mirkia and Ziaei alleged fraudulent misrepresentation against Allstate, Khuriabet, and Legacy because, during the course of a business transaction, Khuriabet supplied materially false information to Allstate about Mirkia and Ziaei's home ownership status.  (*Id.* at 22).

In the eighth cause of action, Mirkia and Ziaei alleged alter ego liability against Khuraibet and Legacy because Khuraibet was the owner of Legacy.  (*Id.* at 23).  Legacy was a shell and sham corporation without assets, capital, stock, or other shareholders aside from Khuraibet.  (*Id.*).  The unity of interest and ownership between Khuriabet and Legacy were "inseparable from each other, and adherence to the corporate fiction of a separate entity would sanction fraud or promote a manifest injustice."  (*Id.* at 24).

7

1
2
3
4
5
6

In the ninth cause of action, Mirkia and Ziaei alleged Unfair Claims Practices Act, NRS §§ 686A.310 and 684A.035, against Allstate, Khuraibet, and Legacy.  (*Id.* at 24-25).  Allstate had resisted a prompt, fair, and equitable settlement of Mirkia and Ziaei's claims for the theft.  (*Id.* at 24).  Khuriabet negligently, willfully, and/or recklessly misrepresented the status of their home ownership on their insurance applications.  (*Id.* at 25).  Allstate and Legacy were vicariously liable for Khuriabet's conduct.  (*Id.*).

7

## LEGAL STANDARD

8
9
10
11
12
13
14
15
16

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true all factual allegations in the complaint as well as all reasonable inferences that may be drawn from such allegations. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1150 n.2 (9th Cir. 2000).  Such allegations must be construed in the light most favorable to the nonmoving party. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).  In general, the court should only look to the contents of the complaint during its review of a Rule 12(b)(6) motion to dismiss.  However, the court may consider documents attached to the complaint or referred to in the complaint whose authenticity no party questions.  *Id.*; *see Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).

17
18
19
20
21
22
23
24
25
26
27
28

The analysis and purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (quotations omitted).  To avoid a Rule 12(b)(6) dismissal, a complaint does not need detailed factual allegations;  rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007));  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (stating that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").  Even though a complaint does not need "detailed factual

8

1
2
3
4
5
6
7

allegations" to pass muster under 12(b)(6) consideration, the factual allegations "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. at 1966).

8
9
10
11
12
13
14
15

　　　If the court grants a motion to dismiss a complaint, it must then decide whether to grant leave to amend. The court should "freely give" leave to amend when there is no "undue delay, bad faith or dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

16

**DISCUSSION**

17

**I.    Allstate's Motion to Dismiss, or in the Alternative, Motion to Sever Claims for Bad Faith or in the Alternate Motion to Bifurcate and Stay Claims for Bad Faith (#24)**

18
19
20
21
22
23
24
25
26
27

　　　Allstate seeks to dismiss the bad faith causes of action in the counterclaim including the first cause of action for bad faith, the third cause of action for breach of the implied covenant of good faith and fair dealing, and the ninth cause of action for violations of Unfair Claims Practices Act because Mirkia and Ziaei have not proven entitlement to coverage for the claimed theft loss. (Mot. to Dismiss/Sever (#24) at 8). Allstate argues that a bad faith claim does not exist until coverage is established and must be dismissed pursuant to *Pemberton v. Farmers Ins. Exchange*, 858 P.2d 380 (Nev. 1993). (*Id.* at 9). Allstate asserts that federal courts routinely bifurcate the coverage issues for trial prior to and separate them from the bad faith claim to promote judicial economy and efficiency. (*Id.* at 10). Allstate cites multiple cases to support bifurication at trial. (*Id.* at 11). Allstate contends that before a bad

28

9

1   faith or Unfair Claims Practices Act claim can exist, there must be a final determination as to

2   the contractual coverage.  (*Id.* at 13).  Allstate asserts that Mirkia and Ziaei's bad faith claims

3   are premature and must be dismissed pending the resolution of Allstate's declaratory relief

4   action.  (*Id.*).  Allstate argues that the bad faith claims will result in unfair prejudice to it

5   because it will "jaundice" the jury's view of the coverage issues.  (*Id.* at 14).  Allstate also

6   asserts that discovery on the bad faith claims are premature and prejudicial and that none of

7   the witnesses on the contractual claim and bad faith claims are the same except for Khuraibet.

8   (*Id.* at 14-15).  Alternatively, Allstate requests that the Court sever or bifurcate bad faith claims

9   from the contractual claims.  (*Id.* at 15).

10      In response, Mirkia and Ziaei argue that the Court cannot dismiss their bad faith claims

11   for failure to state a claim because they have properly pled their claims.  (Opp'n to Mot. to

12   Dismiss/Sever (#27) at 7).  Mirkia and Ziaei argue that, in Nevada, the law does not require

13   them to bring a separate lawsuit for bad faith after finding that the insurance company

14   breached the contract.  (*Id.* at 8).  Mirkia and Ziaei argue that *Pemberton* is outdated.  (*Id.*

15   at 9).  Mirkia and Ziaei argue that none of the factors weigh in favor of bifurcation.  (*Id.* at 14).

16   Mirkia and Ziaei argue that the Court should sanction Allstate for bringing a motion to bifurcate

17   that masquerades as a motion to dismiss instead of answering the complaint and for

18   misrepresenting state law.  (*Id.* at 25).

19      Allstate filed a reply.  (Reply to Mot. to Dismiss/Sever (#32)).

20      **A.    Bad Faith**

21      Nevada law recognizes an implied covenant of good faith and fair dealing in every

22   contract.  *Pemberton v. Farmers Ins. Exch.*, 858 P.2d 380, 382 (Nev. 1993).  An insurer fails

23   to act in good faith when it refuses to compensate the insured for a covered loss.  *Id*. This

24   breach of the good faith and fair dealing covenant constitutes bad faith when the relationship

25   of the parties is that of insurer and insured.  *Id*.  The Nevada Supreme Court has held that a

26   plaintiff does not need to establish success on a contractual claim prior to proceeding with a

27   bad faith claim.  *See  Albert H. Wohlers & Co. v. Bartgis*, 969 P.2d 949, 955 n.2 (Nev. 1998)

28   (declining to adopt the directed verdict rule which states that in order to establish a prima facie

case of bad faith, the plaintiff must proffer sufficient evidence demonstrating that the plaintiff is entitled to a directed verdict on the contract claim).  To find otherwise would require a plaintiff to commence two separate lawsuits even if the facts establish that the insurer breached the insurance contract and acted in bad faith within the same factual sequence. *Drennan v. Maryland Cas. Co.*, 366 F.Supp.2d 1002, 1007 (D. Nev. 2005).

In this case, the Court denies Allstate's motion to dismiss Mirkia and Ziaei's bad faith claims because Nevada law does not require Mirkia and Ziaei to obtain a judgment on the contract claim before initiating a bad faith claim.  Additionally, Mirkia and Ziaei allege bad faith in the same factual sequence as the contract claim because they assert that Allstate knew that they were leasing to own the property because they had provided Allstate agent Khuriabet with a copy of the lease to own agreement during the policy application process.  Therefore, the Court will not dismiss Mirkia and Ziaei's bad faith claims.

**B.      Bifurcation**

Federal Rule of Civil Procedure 42(b) authorizes the court to order a separate trial of any claim when separation is in the interest of judicial economy, will further the parties' convenience, or will prevent undue prejudice. Fed. R. Civ. P. 42(b).  "Bifurcation is particularly appropriate when resolution of a single claim or issue could be dispositive of the entire case." *Drennan*, 366 F.Supp.2d at 1007.  "However, bifurcation of the trial does not necessarily require bifurcation of discovery." *Id*.

The Court finds that bifurcation of discovery is not warranted in this case.  The Court finds that Mirkia and Ziaei's bad faith claims are intertwined with Allstate's contract claim because Mirkia and Ziaei allege that they informed Khuriabet of their lease to own status during the policy application process which is now the basis of Allstate's denial of coverage. As such, the Court finds that joint discovery is more convenient to the parties and would further judicial economy.

Additionally, the Court declines to bifurcate the contractual claim from the bad faith claims at this time.  However, after discovery, Allstate may renew its motion to bifurcate and address the separation factors as applied to this case.

Accordingly, the Court denies Allstate's Motion to Dismiss, or in the Alternative, Motion to Sever Claims for Bad Faith or in the Alternate Motion to Bifurcate and Stay Claims for Bad Faith (#24).

## II.    Khuraibet and Legacy's Motion to Dismiss (#25)

Khuraibet argues that, as an individual, he should be dismissed from the third-party complaint because Mirkia and Ziaei have failed to plead facts that he was the alter ego of Legacy.  (Mot. to Dismiss (#25) at 8).  Legacy argues that it should be dismissed from the second, third, eighth, and ninth causes of action in the third-party complaint because it was not a party to the contract.  (*Id.*).  Khuraibet and Legacy assert that they should be dismissed from the second cause of action for breach of contract because they were not parties to the contract and, to the extent that Khuraibet committed any acts or omissions in his capacity as a claim reporter, Mirkia and Ziaei must bring the claim against Khuraibet's principal, Allstate. (*Id.* at 12).  Khuraibet and Legacy argue that the third claim for breach of the implied covenant of good faith and fair dealing must be dismissed because they were not parties to the contract. (*Id.* at 13).  Khuraibet and Legacy contend that the eighth claim for alter ego must be dismissed because Mirkia and Ziaei have only pled conclusory allegations for the claim.  (*Id.* at 13, 15).  Khuraibet and Legacy argue that the ninth cause of action for violations of the Unfair Claims Practices Act must be dismissed because they are not adjusters subject to the Act.  (*Id.* at 16).

In response, Mirkia and Ziaei argue that Khuriabet is liable for breach of an oral agreement to obtain insurance as requested.  (Opp'n to Mot. to Dismiss (#36) at 7-8).  Mirkia and Ziaei assert that Legacy is liable for breach of contract under vicarious liability.  (*Id.* at 9). Mirkia and Ziaei argue that they have sufficiently pled alter ego liability.  (*Id.* at 11).  Mirkia and Ziaei assert that whether Khuraibet has sufficient capitalization, maintained corporate formalities, and maintained separate and distinguishable interests from his own are questions of fact that can only be resolved during discovery and a trial.  (*Id.* at 13).  Mirkia and Ziaei argue that whether Khuraibet is an insurance adjuster is a question of fact which this Court cannot determine on a motion to dismiss.  (*Id.* at 14).  Mirkia and Ziaei also assert that the

Unfair Claims Practice Act imposes liability on insurance agents who supervise more than 25 employees and that whether Khuriabet is an employer of more than 25 employees is question of fact.  (*Id.* at 15).

In reply, Khuriabet and Legacy assert that Mirkia and Ziaei have failed to provide any factual allegations to support the elements of alter ego.  (Reply to Mot. to Dismiss (#38) at 4).  Khuriabet and Legacy argue that, as pled in the third-party complaint and taking those allegations as true, Khuriabet is not an insurance adjuster within the meaning of the statute.  (*Id.* at 6).  Khuriabet and Legacy assert that the third-party complaint does not allege that there existed a separate contract between Khuriabet, Mirkia, and Ziaei to procure insurance.  (*Id.* at 7-8).

## A.    Breach of Contract

In Nevada, a plaintiff in a breach of contract action must show: "(1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach."  *Brown v. Kinross Gold U.S.A., Inc.*, 531 F.Supp.2d 1234, 1240 (D. Nev. 2008).  "For a plaintiff to bring a breach of contract action against a defendant, the plaintiff and defendant must have a contractual relationship."  *Id.*  "Typically, only a party to a contract can breach it."  *Id.*

In this case, Mirkia and Ziaei's allegations refer to the insurance contract between Allstate and themselves.  They do not allege that they had any contract between Khuriabet and themselves.  As such, Mirkia and Ziaei fail to state a claim for breach of contract against Khuriabet.  Additionally, under Nevada law, if Khuriabet did something within the scope of his agency that violated the terms of the insurance contract, then Mirkia and Ziaei's recourse is to sue Allstate as Khuriabet's principal.  *See Vargas v. California State Auto. Ass'n Inter-Ins. Bureau*, 788 F.Supp. 462, 464 (D. Nev. 1992) (finding that if the insurance agent did something within the scope of his agency that violated the terms of the insurance contract, the plaintiff's only recourse was to sue the insurance company as the agent's principal and as the signatory to the contract; if the agent did something outside the scope of his agency to harm the plaintiff, such act could not be properly brought as a breach of contract action since the agent had no contractual relationship with the plaintiff).

1   Nevertheless, this Court recognizes that Mirkia and Ziaei could have had an oral

2   contract with Khuriabet and Legacy to procure insurance.  *See Keddie v. Beneficial Ins., Inc.*,

3   580 P.2d 955, 955-56 (Nev. 1978) (recognizing that an oral agreement to procure insurance

4   between an insurance agent and his clients could exist).  However, Mirkia and Ziaei have not

5   alleged any facts in the third-party complaint to establish the existence of such a contract.  As

6   such, the Court grants the motion to dismiss the breach of contract claim against Khuriabet

7   and Legacy with leave to amend.

8   **B.     Breach of the Implied Covenant of Good Faith and Fair Dealing**

9   To state a claim for breach of the implied covenant of good faith and fair dealing, a

10  plaintiff must allege: (1) the plaintiff and defendant were parties to a contract; (2) the defendant

11  owed plaintiff a duty of good faith and fair dealing; (3) the defendant breached the duty by

12  performing in a manner unfaithful to the purpose of the contract; and (4) the plaintiff's justified

13  expectations were denied.  *Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995).

14  As discussed above, Mirkia and Ziaei have not alleged that they, Khuriabet, and Legacy

15  were parties to a contract.  Therefore, this Court grants the motion to dismiss this cause of

16  action with leave to amend.

17  **C.     Alter Ego**

18  To state a claim for alter ego liability, a plaintiff must allege that:  (1) the corporation

19  must be influenced and governed by the person asserted to be its alter ego; (2) there must be

20  such unity of interest and ownership that one is inseparable from the other; and (3) the facts

21  must be such that adherence to the fiction of separate entity would sanction fraud or promote

22  injustice.  *Lorenz v. Beltio, Ltd.*, 963 P.2d 488, 496 (Nev. 1998).  "It is not necessary that the

23  plaintiff prove actual fraud.  It is enough if the recognition of the two entities as separate would

24  result in an injustice."  *Polaris Indus. Corp. v. Kaplan*, 747 P.2d 884, 886 (Nev. 1987).  "In

25  determining whether a unity of interest exists between the individual and the corporation,

26  courts have looked to factors like co-mingling of funds, undercapitalization, unauthorized

27  diversion of funds, treatment of corporate assets as the individual's own, and failure to observe

28  corporate formalities."  *Id*. at 887.

In this case, the Court grants the motion to dismiss the alter ego liability claim against Khuriabet and Legacy.  Mirkia and Ziaei provide no factual allegations that would support alter ego liability and instead only provide conclusory statements that Khuriabet/Legacy were undercapitalized, a shell and sham corporation, that there was a unity of interest and ownership that were inseparable from each other, and that it would sanction fraud or promote a manifest injustice.  (*See* Counterclaim (#16) at 23-24).  Mirkia and Ziaei provide no further factual enhancements.  *See Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949.  As such, this Court dismisses this cause of action but grants leave to amend to give Mirkia and Ziaei an opportunity to provide factual enhancements that would support the elements of alter ego liability.

### D.      Unfair Claims Practices Act

Nevada Revised Statute § 686A.310 lists 16 activities which constitute unfair practice in the insurance context.  *See* Nev. Rev. Stat. § 686A.310(1)(a)-(p).  These activities apply to "adjusters" and "associate adjusters."  Nev. Rev. Stat. § 684A.035(1) (stating that  NRS §§ 683A.341-686A.310 apply to adjusters and associate adjusters).  An "adjuster" is "any person who, for compensation as an independent contractor or for a fee or commission, investigates and settles, and reports to his or her principal relative to, claims . . . arising under insurance contracts for property."  Nev. Rev. Stat. § 684A.020(1)(a).  An "associate adjuster" is "an employee of an adjuster who, under the direct supervision of the adjuster, assists in the investigation and settlement of insurance losses on behalf of his or her employer."  Nev. Rev. Stat. § 684A.030(3).  An "agent" is a "producer of insurance who is compensated by the insurer and sells, solicits or negotiates insurance for the insurer."  Nev. Rev. Stat. § 683A.321(7)(a).  A "broker" is a producer of insurance who: (1) is not an agent of an insurer; (2) solicits, negotiates or procures insurance on behalf of an insured or prospective insured; and (3) does not have the power, by his or her own actions as a broker, to obligate an insurer upon any risk or with reference to any transaction of insurance.  Nev. Rev. Stat. § 683A.321(7)(b)(1)-(3).  An licensed agent who supervises more than 25 employees who collects information relating to a claim for coverage arising under an insurance contract from

or furnishes such information to an insured or a claimant and conducts data entry is an adjuster.  Nev. Rev. Stat. § 684A.020(2)(f)-(g).

In this case, the Court grants the motion to dismiss the Unfair Claims Practices Act against Khuriabet and Legacy.  As pled in the third-party complaint, Khuriabet is either an agent or a broker of Allstate and, therefore, not subject to the Unfair Claims Practices Act.  (*See* Counterclaim (#16) at 9-11, 25).  Although, Mirkia and Ziaei try to argue that Khuriabet could be an "adjuster" because Khuriabet may be supervising more than 25 applicable employees, they have not pled any facts that would support that contention.  As such, the Court dismisses this cause of action against Khuriabet and Legacy with leave to amend.

Accordingly, the Court grants Khuriabet and Legacy's motion to dismiss the second, third, eighth, and ninth causes of action against them with leave to amend.  Mirkia and Ziaei have 20 days from the date of this order to file an amended thirty-party complaint against Khuriabet and Legacy.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that Allstate's Motion to Dismiss, or in the Alternative, Motion to Sever Claims for Bad Faith or in the Alternate Motion to Bifurcate and Stay Claims for Bad Faith (#24) is DENIED.

IT IS FURTHER ORDERED that Walid Khuraibet and Legacy Agency LLC's Motion to Dismiss (#25) is GRANTED with leave to amend.  The Court grants the motion to dismiss the second, third, eighth, and ninth claims in the third-party complaint against Walid Khuraibet and Legacy Agency.  Kiarash Mirkia and Poupak Ziaei have 20 days from the date of this order to file an amended third-party complaint.

DATED: This _7th_ day of March, 2013.

_____
United States District Judge