McCormick, Barstow, Sheppard, Wayte & Carruth LLP
Gordon M. Park
Nevada Bar No. 7124
 gordon.park@mccormickbarstow.com
Philip A. John
Nevada Bar No. 10627
 philip.john@mccormickbarstow.com
8337 West Sunset Road, Suite 350
Las Vegas, Nevada 89113
Telephone:   (702) 949-1100
Facsimile:   (702) 949-1101

Attorneys for Plaintiff/Counterdefendant Allstate
Property and Casualty Insurance Company,
Third-Party Defendants, Walid Khuraibet and
Legacy Agency, LLC, a Nevada corporation

FILED _____ RECEIVED _____
ENTERED _____ SERVED ON _____
COUNSEL/PARTIES OF RECORD

JAN 24 2014

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA, SOUTHERN DIVISION

| | |
|---|---|
| Allstate Property Casualty Insurance Company, an Illinois corporation,<br><br>Plaintiff,<br><br>v.<br><br>Kiarash Mirkia, an individual, Poupak Ziaei, an individual,<br><br>Defendants. | Case No.  2:12-CV-01288-RCJ-PAL<br><br>**MOTION TO EXCLUDE OPINIONS NOT CONTAINED IN EXPERT REPORT AND MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO DEFENDANTS' COUNTERCLAIMS AGAINST THIRD-PARTY DEFENDANTS WALID KHURAIBET AND LEGACY AGENCY, LLC** |
| Kiarash Mirkia, an individual, Poupak Ziaei, an individual,<br><br>Counterclaimants,<br><br>v.<br><br>Allstate Property Casualty Insurance Company, an Illinois corporation,<br><br>Counterdefendant. | |
| Kiarash Mirkia, an individual, Poupak Ziaei, an individual,<br><br>Third-Party Plaintiffs,<br><br>v.<br><br>Walid Khuraibet, an individual, Legacy Agency, LLC, a Nevada corporation,<br><br>Third-Party Defendants. | |

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
8337 W. SUNSET RD, SUITE 350
LAS VEGAS, NV 89113

03246-01555 2791968.1

MOTION TO EXCLUDE OPINIONS NOT CONTAINED IN EXPERT REPORT AND MOTION FOR
PARTIAL SUMMARY JUDGMENT

COMES NOW Plaintiff ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY'S (hereinafter "ALLSTATE") by and through their counsel, GORDON M. PARK and PHILIP A. JOHN of the Law Offices of McCormick, Barstow, Sheppard, Wayte & Carruth LLP and hereby submits the following Motion To Exclude Opinions Not Contained In Expert Report And Motion For Partial Summary Judgment As To Defendants' Counterclaims Against Third-Party Defendants Walid Khuraibet And Legacy Agency, LLC pursuant to FRCP 56 and FRCP 26(a)(2)(B).

This motion is based on the pleadings and papers on file herein, the Memorandum of Points and Authorities attached hereto, the Affidavits and Exhibits provided in support, and such other further oral or written evidence as may be presented at the time of hearing this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Defendants/Counterclaimants' KIARASH MIRKIA and POUPAK ZIAEI (collectively, "Defendants") have blatantly violated long-established black-letter procedural law with respect to the disclosure of the opinions of their expert Gary Fye. One of the most basic rules of expert disclosure is FRCP 26(a)(2)(B), which requires that an expert's written report contain a complete statement of all opinions to be expressed at trial and the bases for each opinion. Defendants and Fye have grossly violated this rule, and the Federal Rules of Civil Procedure mandate that Fye's testimony must be limited accordingly.

ALLSTATE does not state lightly that Fye has "blatantly" and "grossly" failed to comply with the disclosure rules; Fye has expressed both a disregard for the rules and an intent to further violate them. As outlined below, not only did Fye state new opinions at his deposition that he unabashedly admitted were wholly absent from, and unrelated to, his only written expert report, but he explicitly stated his intent to give further opinions at trial which were not previously disclosed. As might be expected given these statements, Fye never issued a supplemental expert report, and the deadline to serve such a supplemental report has since passed. Quite simply, any attempt to offer these opinions would fly in the face of the black-letter law requiring disclosure in a written report of an expert's opinions they intend to offer at trial, and the sole adequate remedy at law is the exclusion of such

**MOTION TO EXCLUDE OPINIONS NOT CONTAINED IN EXPERT REPORT AND MOTION FOR PARTIAL SUMMARY JUDGMENT**

1 | opinions.

2 |     ALLSTATE therefore respectfully requests that the Court limit Fye from offering any opinions

3 | that are not contained in his written report, with specific reference to the opinions he revealed for the

4 | first time in his deposition. Though this encompasses many opinions, for the purposes of this Motion

5 | for Partial Summary Judgment it is especially important to note that Fye's expert report contains

6 | absolutely no mention of his opinions on the insurance agent Third-Party Defendant Walid Khuraibet

7 | ("Mr. Khuraibet"), no mention of his opinions on Third-Party Defendant Legacy Agency, LLC

8 | ("Legacy"), an no mention of the legal standard of care applicable to insurance agents. Thus, Fye

9 | must be prohibited from testifying at trial regarding any opinions he may have regarding Mr.

10 | Khuraibet's actions, Legacy, or the legal standard of care applicable to insurance agents.

11 |     The exclusion of Fye's testimony regarding Mr. Khuraibet and Legacy is critical because

12 | Defendants have no other expert testimony to establish Mr. Khuraibet's standard of care as an

13 | insurance agent, or that any standard of care was breached by Mr. Khuraibet and Legacy. Defendants'

14 | only other expert, Elliot Flood, specifically has stated he cannot opine on these topics. As outlined

15 | below, it is an established legal requirement in Nevada that a breach of a professional standard of care,

16 | like that of an insurance agent, be proved by expert testimony. In the absence of any admissible

17 | expert testimony regarding Mr. Khuraibet's actions, Legacy, or the standard of care for an insurance

18 | agent, Defendants cannot establish their claims against Mr. Khuraibet and Legacy. Accordingly, based

19 | on the inadmissibility of Fye's testimony regarding Mr. Khuraibet and Legacy, ALLSTATE requests

20 | that all of Defendants' counterclaims against Mr. Khuraibet and Legacy (Defendants' Second, Third,

21 | Fourth, Fifth, Sixth, and Seventh Causes of Action) be dismissed.

22 | **II.**

23 | **FACTUAL BACKGROUND**

24 |     This case arises from a coverage dispute arising from an alleged theft that occurred on January

25 | 30, 2012 of expensive jewelry from a house being rented by Defendants MIRKIA and ZIAEI. In

26 | December 2011, MIRKIA and ZIAEI signed a lease agreement and moved into the property located at

27 | 68 Wildwing Court, Las Vegas, Nevada. They then contacted Allstate insurance agent Walid

28 | Khuraibet, seeking to obtain a homeowners policy on the property. Per Mr. Khuraibet, Dr. Mirkia

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
8337 W. SUNSET RD. SUITE 350
LAS VEGAS, NV 89113

03246-01555 2791968.1       3        2:12-CV-01288-RCJ-PAL
**MOTION TO EXCLUDE OPINIONS NOT CONTAINED IN EXPERT REPORT AND MOTION FOR
PARTIAL SUMMARY JUDGMENT**

1  represented that he recently purchased the property and never once mentioned that he was leasing or

2  renting the property. Per Dr. Mirkia, he represented that he was leasing the property. A homeowners

3  policy was issued with an effective date of December 15, 2011. On January 6, 2011, Dr. Mirkia

4  signed an Application for Homeowners Insurance indicating that he owned the property.

5  Subsequently on January 10, 2012 an independent inspector came to the property to verify its size and

6  value and once again Dr. Mirkia represented that he owned the property.

7      On January 30, 2012, an alleged theft occurred when their nanny left their service, allegedly

8  taking several pieces of expensive jewelry with her. Dr. MIRKIA filed a claim with ALLSTATE on

9  March 1, 2013. Due to the suspicious nature and timing of the alleged theft, Allstate SIU adjuster,

10  Michelle Bolton, was assigned to investigate the claim. She discovered for the first time that Dr.

11  Mirkia did not actually own the home, but rather was simply renting it. The Allstate underwriter, J.C.

12  Arnett, explained in detail how Allstate would never had written the policy had it known Dr. Mirkia

13  was renting the home, as both the house and the scheduled jewelry, far exceeded the value Allstate is

14  permitted to write for renters policies.

15      On July 19, 2012 ALLSTATE filed a declaratory relief action seeking rescission of the

16  insurance policy issued to MIRKIA and ZIAEI on the basis of misrepresentation after it learned that

17  Dr. Mirkia did not in fact own the property. (Please see Exhibit "A", Affidavit of Philip A. John in

18  Support of Motion to Exclude and Motion for Partial Summary Judgment).[1]

19  **A.   Gary Fye's Expert Report**

20      On July 12, 2013, Defendants disclosed and produced their expert witness on bad faith, Gary

21  Fye, and his initial report. (Please see Defendants Kiarash Mirkia and Poupak Ziaei's Disclosure of

22  Expert Witness, attached hereto as Exhibit "B"). The report contained nine sections, ranging from

23  background information to his conclusions and opinions regarding the case. The last section, Section

24  "I" included his "findings" with regard to the current matter. There, he listed seven opinions

25

---

[1] Please note a far more detailed factual background is provided in Allstate's Motion for Summary
26  Judgment as to All Bad Faith Causes of Action, also filed with this Court on January 24, 2014. Said
     factual background and its many Exhibits in support are hereby attached by reference. However, as
27  this Motion simply seeks to exclude opinions of Gary Fye in violation of FRCP (a)(2)(B), said factual
     background is not relevant to the inquiry of what Mr. Fye can and cannot testify to.
28

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
8337 W. SUNSET RD. SUITE 350
LAS VEGAS, NV 89113

03246-01555 2791968.1                    4                    2:12-CV-01288-RCJ-PAL
MOTION TO EXCLUDE OPINIONS NOT CONTAINED IN EXPERT REPORT AND MOTION FOR
PARTIAL SUMMARY JUDGMENT

1  regarding his finding of "unreasonable claim handling" on the part of ALLSTATE.  All of these

2  "findings" revolved around the actions taken by ALLSTATE after the claim was made.  None of the

3  "findings" dealt with the original underwriting of the policy and contained no opinions regarding the

4  agent who issued the policy, Walid Khuraibet.

5      Additionally, the report contained a list of "Data & Information Considered," which included

6  "generally available literature on insurance and management, articles, tapes, and ads from generally

7  available sources." Id. at p. 2-3. Fye then listed 17 examples of such "generally available literature,"

8  and in the report generally cited to those documents as "[s]ee foundational texts listed under Data

9  Considered, above." Some of the literature referenced included entire books. He did not provide

10 copies of any of these documents, nor did he provide specific cites as to what information he obtained

11 from which source.

12 **B.**    **Gary Fye's Deposition Testimony**

13      Fye's deposition was duly noticed for December 27, 2013. (See *Notice of Deposition of Gary*

14 *Fye*, attached hereto as Exhibit "C"). On December 27, 2013, counsel for ALLSTATE took the

15 deposition of Mr. Fye. Numerous times throughout his deposition, he testified to opinions that were

16 not contained in his report, and referred to documents which he did not produce. Additionally, his

17 responses to questions regarding his opinions were often evasive and argumentative.

18      **1.**    **Mr. Fye Was Not Prepared for His Deposition**

19      Mr. Fye was unprepared for his deposition. He testified at the deposition that he told counsel

20 prior to the deposition that they "could probably make some progress in this deposition, even though I

21 haven't read the entire record." (See Deposition Transcript of Gary Fye from December 27, 2013 at p.

22 46:6-9, attached hereto as Exhibit "D"). He then testified that he did not recall if he read the most

23 recent disclosures, hadn't reviewed all of the pleadings, and didn't believe he had read ALLSTATE's

24 rebuttal expert report. Id. at p. p. 47:5, 48:3, 50:6-20.

25      **2.**    **Mr. Fye's References to "Generally Available Literature"**

26      When asked about the "generally available literature," that he referenced in his report as

27 documents relied upon in drafting his report, he admitted that he did not provide those documents to

28 counsel. Id. at p. 49:8. Additionally, the report itself referenced documents that were not on the list

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
8337 W. SUNSET RD, SUITE 350
LAS VEGAS, NV 89113

03246-01555 2791968.1                        5                    2:12-CV-01288-RCJ-PAL

**MOTION TO EXCLUDE OPINIONS NOT CONTAINED IN EXPERT REPORT AND MOTION FOR
PARTIAL SUMMARY JUDGMENT**

1   described above and were not disclosed or provided to ALLSTATE.  For example, Section F and G of

2   his report discuss the redesign of Allstate's claims processing in the 1990's, and the use of McKinsey

3   & Company to implement the redesign.  Yet, Fye does not provide any documentation regarding

4   McKinsey & Company or their redesign, as Fye himself admitted. See Exhibit "D", at p. 63:17-20.

5   Additionally, Part F of his report quoted a *Claim Core Process Redesign Implementation Training*

6   *Manual*, which was not referenced in his list of documents nor provided to Defendants. Exhibit "B" at

7   6, Exhibit "D" at p. 63:25- 64:2.

8          Then, at his deposition, Mr. Fye went on at length about the book *From Good Hands to Boxing*

9   *Gloves*, testifying that ALLSTATE changed insurance into a "zero sum game, where somebody has to

10  lose." Id. at p. 60.  The book was not specifically cited anywhere in his report.  Apparently Mr. Fye

11  directly quoted from the book in the report, but this was impossible to decipher as the only citation he

12  gave was to "one author listed above." See Exhibit "B" at p. 7.

13         **3.     Mr. Fye's Testimony Regarding Individuals not Mentioned in His Report**

14         Besides the unsupported statements contained in Sections F and G of his report, at his

15  deposition Mr. Fye opined at length about specific individuals who were involved in the underwriting

16  of the policy and the handling of the claim and what in his opinion they did wrong.  These new

17  opinions were not contained in his report.

18         **a.      Testimony Regarding Allstate's Insurance Agent, Walid Khuraibet**

19         For example, although Mr. Fye's expert report did not contain any references to or opinions

20  about Walid Khuraibet, at the deposition Mr. Fye stated that he had flagged and highlighted Mr.

21  Khuraibet's deposition transcript, and proceeded to give opinions about Mr. Khuraibet's work as an

22  insurance agent as it related to Dr. Mirkia. See id. at 55, 86-101.  Nonetheless, he did not have a copy

23  of his allegedly flagged and highlighted transcript, nor could he identify the specific parts of Mr.

24  Khuraibet's testimony that he took issue with. See id. at p. 117-118.  While all of these unsupported

25  opinions regarding Mr. Khuraibet were absent from Mr. Fye's report and introduced for the first time

26  at Mr. Fye's deposition, he stated that he would later have *even more* opinions, as reflected in the

27  following conversation:

28         Q: Any other things that Walid did, in your opinion, which were

03246-01555 2791968.1                          6                          2:12-CV-01288-RCJ-PAL

**MOTION TO EXCLUDE OPINIONS NOT CONTAINED IN EXPERT REPORT AND MOTION FOR
PARTIAL SUMMARY JUDGMENT**

1    incorrect or improper?

2    A: Let me reserve the right to add to that list as I reflect.  I'm giving
3    you off-the-cuff answers.

4    Id. at p. 101:7-12.

5        **b.    Testimony Regarding Allstate's SIU Adjuster, Michelle Bolton**

6        Mr. Fye's report  only contained a few opinions regarding Allstate's SIU adjuster.  Besides

7    those opinions contained in his report, Mr. Fye testified that he had several other opinions about

8    Michelle Bolton and her handling of the claim, but he refused to discuss those opinions because he did

9    not have her flagged and highlighted deposition transcript with him.  See id. at p. 117.  Instead of

10   being prepared to discuss all of the opinions he intended to testify to at trial, as required, he blamed his

11   inability to discuss the issues on ALLSTATE:

12       Q: Okay.  Now, for Michelle Bolton, the SIU adjuster involved, you
         listed a few things which you believe she did incorrectly, correct?
13
14       A: Well, I have, what, a 200-some-page deposition of her flagged and
         highlighted with several different things, not just what I've talked off
15       the cuff here.  But you didn't ask me for my documents.

16       Q: What was that?

17       A: You didn't ask me for my documents.  In other words, if you had
         taken this deposition with the documents, I'd be able to go through
18       these depositions and give you more thorough answers.

19       Q: Okay.

20       A: But you've kind of gotten past that.

21       Q: As you sit here today, do you have any additional specific things
         you believe Michelle Bolton did wrong beyond those included in your
22       report?

23       A: Yes, those things that I've underlined, highlighted and flagged in
24       her deposition.

25       Q: Are you prepared to discuss them with me today?

26       A: I'm, I guess I would glad to if you want me to go get the deposition.

27       Q: Can you discuss them right now?

28       A: No.

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
8337 W. Sunset Rd. Suite 300
Las Vegas, NV 89113

03246-01555 2791968.1                                    7                        2:12-CV-01288-RCJ-PAL
MOTION TO EXCLUDE OPINIONS NOT CONTAINED IN EXPERT REPORT AND MOTION FOR
PARTIAL SUMMARY JUDGMENT

1    <u>Id.</u> at p. 117-118.

2         **c.     Testimony Regarding Allstate's Underwriter, J.C. Arnett**

3         Similarly, Mr. Fye did not provide any opinions about or references to J.C. Arnett or his

4    handling of the underwriting. Yet, in his deposition, he testified that he was of the opinion that Mr.

5    Arnett's methods and handling of the claim was inappropriate. <u>Id.</u> at p. 119. He implied that at trial he

6    would be testifying to other things he flagged and highlighted in Mr. Arnett's deposition and other

7    individual's depositions who were involved in the case: "Every, every deposition I have tagged,

8    highlighted, put flags on there to refer me to things that are involved, potentially involved with my

9    testimony." <u>Id.</u> at 118.

10        **d.     Testimony as to Other Opinions of How Allstate Veered from Industry**
          **Standards**
11

12        Mr. Fye then went on to state that he had additional opinions about how ALLSTATE's actions

13   allegedly veered from industry standards:

14             Q: Any additional ones beyond those we've discussed today?

15             A: Well, sure, but that, that will give you a start.

16             Q: Any additional ones beyond those we've discussed today? I'd like
               all your opinions you're going to give.
17

18             A: Well, with my report and the narratives that, answers that I've given
               you today, that's what's on my mind.
19

               Q: Okay.
20
               A: But keep in mind, I'm telling you that there's a bunch of
21             information, there are ten depositions all flagged and highlighted with
               other subjects that I may not be recalling today.
22

23             <u>Id.</u> at p. 121.

24        He was then asked again if he had any other opinions he intended to proffer, at which point he

25   went into a "revelation" about what he usually testifies to in court. <u>See</u> Exhibit "D" at p. 122. He

26   then gave a narrative about repressive claims handling by insurance companies, programs created by

27   insurance companies to create a "zero-sum game" for the insured, and mechanisms he asserts that

28   ALLSTATE has created that seek to underpay claims and impose its own rules. <u>Id.</u> at p. 122-123. As

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
8337 W SUNSET RD, SUITE 250
LAS VEGAS, NV 89113

03246-01555 2791968.1                                    8                        2:12-CV-01288-RCJ-PAL
MOTION TO EXCLUDE OPINIONS NOT CONTAINED IN EXPERT REPORT AND MOTION FOR
PARTIAL SUMMARY JUDGMENT

1  stated above, his report mentions nothing about a "zero-sum game" being played, his testimony on

2  these points deviated significantly from the opinions he expressed in Sections F and G of his report,

3  and his opinions lacked any basis or support.

4        Finally, despite the fact that Mr. Fye fully intends to come up with many more opinions prior

5  to trial, Mr. Fye has not prepared a rebuttal report, and, at the time of his deposition, had not had any

6  conversations or plans of drafting a supplemental report. See id. at p. 51:18-25; 121:19-23. In fact,

7  discovery is closed, and it is now too late for a supplemental report to be provided.

8        Defendants did provide a rebuttal report by another expert, Elliot S. Flood, however, the report

9  by this expert does not cure any of the deficits of Mr. Fye's report and does not make any opinions as

10  to Mr. Khuraibet's work as an agent. See Rebuttal Report of Elliot S. Flood, attached hereto as Exhibit

11  "E".

12  **III.**

13  **STANDARD FOR SUMMARY JUDGMENT**

14        Under federal law, a court should grant a motion for summary judgment where admissible

15  evidence fails to demonstrate a genuine issue of material fact and the movant is entitled to judgment as

16  a matter of law.[2] An issue is genuine "if the evidence is such that a reasonable jury could return a

17  verdict for the nonmoving party,"[3] and a fact is material if it "might affect the outcome of the suit

18  under the governing law.".[4]

19        If the nonmovant bears the burden of persuasion at trial, the movant simply may show that the

20  nonmovant's evidence is insufficient to carry that burden.[5] "[T]he burden on the moving party may be

21  discharged by showing . . . that there is an absence of evidence to support the nonmoving party's

22  case."[6] "Since a complete failure of proof concerning an essential element,"[7] on which a party bears

23  the burden of proof at trial establishes that the movant is "entitled to a judgment as a matter of law,"

---

24  [2] Fed. R. Civ. P. 56(c).

25  [3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 257 (1986).

26  [4] *Id.* at 248.

27  [5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23(1986)

    [6] *Celotex*, 477 U.S. at 325 (internal quotation marks omitted).

28  [7] *Id.* at 323-24.

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
8337 W SUNSET RD, SUITE 200
LAS VEGAS, NV 89113

03246-01555 2791968.1         9        2:12-CV-01288-RCJ-PAL

**MOTION TO EXCLUDE OPINIONS NOT CONTAINED IN EXPERT REPORT AND MOTION FOR
PARTIAL SUMMARY JUDGMENT**

1   the nonmovant must establish the existence of every element essential to its case.[8]

2        In determining whether a nonmovant has established the existence of a genuine issue of

3   material fact requiring a jury trial, the evidence of the nonmovant must "be believed and all justifiable

4   inferences are to be drawn in [its] favor."[9] Whether an inference is justifiable, however, depends on

5   the evidence adduced.[10] Such evidence must be significantly probative and more than "merely

6   colorable."[11] The nonmovant "may not rest upon mere allegation or denials of his pleadings, but must

7   set forth specific facts showing that there is a genuine issue for trial."[12] An inference based upon

8   speculation or conjecture does not create a material factual dispute sufficient to defeat summary

9   judgment.[13] Likewise, "simply showing that there is some metaphysical doubt as to the material facts"

10   does not establish a genuine issue for trial.[14] Lastly, the Ninth Circuit Court of Appeals has refused to

11   find a "genuine issue" where the only evidence presented is "uncorroborated and self-serving"

12   testimony.[15]

13        Here, Defendants/Counterclaimants bear the burden of persuasion with regards to their claims

14   against Walid Khuraibet,[16] and Allstate needs only to point out that Defendant/Counterclaimants case

15   lacks any admissible evidence demonstrating their legal claims.    Therefore, unless

16   Defendants/Counterclaimants respond by presenting "concrete evidence from which a reasonable jury

17   could return a verdict in its favor,"[17] Allstate is entitled to summary judgment.

18

19   _____

[8] *Id.*

20   [9] *Id.* at 255.

21   [10] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 595-96 (1986).

[11] *United Steelworkers of Am.*, 865 F.2d at 1542.

22   [12] *Liberty Lobby,* 477 U.S. at 256.

23   [13] *United Steelworkers of Am.*, 865 F.2d at 1542 (". . . an inference as to another material fact may be drawn in favor of the nonmoving party . . . if it is 'rational' or 'reasonable'. Of course, the inference drawn must be one permitted under the

24   governing substantive law.") (internal citations omitted).

[14] *Matsushita*, 475 U.S. at 586.

25   [15] *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996); *see generally Johnson v. Washington Metro. Transit*

26   *Auth.*, 883 F.2d 125, 128 (D.C. Cir. 1989) (discussing cases in which self-serving testimony uncorroborated by other evidence did not create a genuine issue of material fact).

27   [16] *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).

28   [17] *Liberty Lobby*, 477 U.S. at 256.

**MOTION TO EXCLUDE OPINIONS NOT CONTAINED IN EXPERT REPORT AND MOTION FOR PARTIAL SUMMARY JUDGMENT**

# IV.
## LAW AND ARGUMENT

**A.   <u>Any and All Opinions and Documents That Were Not Disclosed in Gary Fye's Expert Report Must be Excluded Pursuant to FRCP 26(a)(2)(B)</u>**

Federal Rules of Civil Procedure 26(a)(2)(B) requires expert witnesses to provide a written report that contains "a <u>complete</u> statement of <u>all</u> opinions to be expressed and the basis and reasons therefor." (FRCP 26(a)(2)(B)(emphasis added)  An expert report is to be a detailed and complete statement of the testimony of the expert on direct examination. (<u>See</u>, FRCP 26 Advisory Committee Note to 1993 amendment.)  If a party's expert witness, without substantial justification, fails to disclose such information, then FRCP 37(c)(1) provides that the party "shall not, unless such failure is harmless, be permitted to use [such information] as evidence at a trial." (FRCP 37(c)(1).).

Under FRCP 26(a)(2)(B), an expert report must accompany a party's expert disclosure and **must** contain the following:

- A **complete** statement of **all** opinions to be expressed at trial and the bases for each opinion;
- The date or other information considered in forming the opinion;
- Any exhibits to be used as a summary of or support for the opinion;
- The qualifications of the witness;
- All publications authored by the expert within the preceding ten years;
- A listing of other cases in which the witness testified as an expert (at trial or deposition) in the past four years; and
- The compensation to be paid to the expert.

FRCP 26(a)(2)(B); see also *Jenkins v. Bartlett* (7th Cir. 2007) 487 F.3d 482, 487.

A party who fails to properly disclose an expert report may be barred from using on direct examination any expert testimony not timely disclosed.  FRCP 37(c)(1); *Heidtman v. Cnty. Of El Paso*, (5th Cir. 1999) 171 F.3d 1038, 1040; *Hoffman v. Construction Protective Svcs., Inc.*, (9th Cir. 2008) 541 F.3d 1175, 1179.  Moreover, Rule 26(a)(2) does not allow a party to cure deficient expert reports by supplementing them with later deposition.  *Ciomber v. Cooperative Plus, Inc.*, 527 F.3d

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
8337 W. SUNSET RD. SUITE 350
LAS VEGAS, NV 89113

03246-01555 2791968.1                          11                          2:12-CV-01288-RCJ-PAL
**MOTION TO EXCLUDE OPINIONS NOT CONTAINED IN EXPERT REPORT AND MOTION FOR PARTIAL SUMMARY JUDGMENT**

1    635, 642 (2008).

2        As outlined above, the report accompanying the disclosure is <u>mandatory</u> for the purpose of

3    putting the opposing side on notice of all opinions to be expressed at trial, and failure to include

4    opinions in the report is grounds for exclusion of the opinions at trial.  The failure to provide the

5    report may be excused if it is substantially justified or harmless, however, the party facing the sanction

6    of evidence exclusion has the burden of proving its failure to comply with the disclosure rules was

7    substantially justified or harmless.  FRCP 37(a)(1); *Yeti By Molly, Ltd. v. Deckers Outdoor Corp.*, 259

8    F.3d 1101, 1106-7 (9th Cir. 2001); *Wilson v. Bradless of New England, Inc.*, (1st Cir. 2001) 250 F.3d

9    10, 21.

10       Here, Defendant's purported expert witness on bad faith, Gary Fye, provided an expert report

11   pursuant to FRCP 26(a)(2)(B) that did not contain all of the opinions and bases for those opinions that

12   he intends on testifying to at trial.  Rather, in his deposition, Gary Fye testified to a multitude of new

13   opinions   not contained in his report, and referred to documents that were not provided to

14   ALLSTATE.  Fye appears to believe that he may augment his opinions at any time.

15       As a result, ALLSTATE requests that any and all opinions not disclosed in Fye's report, as

16   well as any and all documents he may have relied on but were not produced to ALLSTATE, be

17   excluded from evidence pursuant to FRCP 26.  Specifically, ALLSTATE requests that Gary Fye not

18   be allowed to testify regarding the topics outlined below.

19       **1.    <u>Any Opinions Regarding Mr. Khuraibet Must Be Excluded</u>**

20       Mr. Fye made **no** mention in his report of any improper actions by Mr. Khuraibet as an

21   insurance agent. The only findings/opinions given in his report regarding Allstate's alleged bad faith

22   revolved around the subsequent denial letter and actions taken by Allstate's fraud adjuster, who Fye

23   does not identify specifically. <u>See</u> Exhibit "B" at p. 9-11. Mr. Fye's report contains **no** references

24   whatsoever to Mr. Khuraibet in his report, nor does it contain any opinions as to the standards of care

25   of an insurance agent or in what way Mr. Khuraibet breached that standard.  His report makes **no**

26   findings whatsoever regarding any "insurance agent." The only time that the term "insurance agent"

27   was even used in his report was in describing the underlying facts, where he stated that "Dr. Mirkia

28   contacted his insurance agent to advise him of the new home." <u>Id.</u> at p. 8. This statement is in no way,

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
8337 W. SUNSET RD. SUITE 150
LAS VEGAS, NV 89113

03246-01555 2791968.1                         12                    2:12-CV-01288-RCJ-PAL
**MOTION TO EXCLUDE OPINIONS NOT CONTAINED IN EXPERT REPORT AND MOTION FOR
PARTIAL SUMMARY JUDGMENT**

1 | shape, or form an opinion regarding Mr. Khuraibet's performance as an insurance agent.

2 |     Nonetheless, at his deposition Mr. Fye had numerous opinions regarding Mr. Khuraibet and

3 | how Mr. Fye believed he did not adequately perform his job as an insurance agent.  Mr. Fye gave at

4 | least seven opinions regarding what he believed Mr. Khuraibet did wrong, *none of which* appear in his

5 | report. Exhibit "D" at p. 99-100.   He then attempted to "reserve the right" to add more opinions to

6 | that list later on, because the opinions given in his properly-noticed were just his "off-the-cuff

7 | answers."

8 |     Rule 26 requires an expert to disclose **all** of the opinions and bases for those opinions in the

9 | expert report.  It does not allow for an expert to come up with additional opinions as they please at

10 | trial. If the expert was apprised of additional information that would cause his opinions to change, the

11 | appropriate course of action would be to provide a supplemental report to adequately put the other

12 | side on notice as to the new opinions formed.  This was not done here.  Rather than provide a

13 | supplemental report, Mr. Fye simply began spouting off new opinions at the deposition and reserving

14 | the right to come up with more later on as if he was not constrained by any rules or procedures.

15 |     **2.**    **Any Testimony Regarding Mr. Arnett's Underwriting of the Policy Must be**
16 |         **Excluded**

17 |     Similarly, nowhere in Mr. Fye's report does he mention Mr. Arnett.  Nowhere in his report

18 | does he even mention Allstate's underwriter. His report did not give any opinions regarding the

19 | standard of care required for an underwriter or the procedures that should be followed, and it certainly

20 | did not give any opinions regarding how Mr. Arnett's handling of the underwriting failed to meet that

21 | standard.  Underwriting is a highly specific field all on its own with very particular rules and

22 | computations that Mr. Fye does not even mention, nor is it clear that Mr. Fye would be qualified to

23 | give opinions on.

24 |     Despite this, in his deposition Mr. Fye testified that he had read Mr. Arnett's deposition and

25 | flagged and highlighted it in preparation to opine on how Mr. Arnett's underwriting of the policy was

26 | not proper.  Mr. Fye apparently took issue with the analytics Mr. Arnett used to determine the course

27 | of handling of the case. (See Exhibit "D" at p. 119).  Mr. Fye did not include these opinions in his

28 | report, and cannot suddenly render opinions on new subjects that were not even touched upon in his

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
8337 W. SUNSET RD. SUITE 350
LAS VEGAS, NV 89113

03246-01555 2791968.1        13        2:12-CV-01288-RCJ-PAL

**MOTION TO EXCLUDE OPINIONS NOT CONTAINED IN EXPERT REPORT AND MOTION FOR
PARTIAL SUMMARY JUDGMENT**

1 | report.  Mr. Fye must be precluded from testifying to any opinions regarding Mr. Arnett or his

2 | underwriting of the claim.

3 | **3.**     <u>Any Testimony Regarding Ms. Bolton's Handling of the Claim other than What</u>
<u>was Contained in Mr. Fye's Report Must Be Excluded</u>

4 |

5 | Mr. Fye's report only briefly opines on Allstate's handling of the claim by the SIU adjuster,

6 | although it never mentions her by name.  At his depositon, though, Mr. Fye testified that he had other

7 | opinions about Michelle Bolton, the SIU adjuster, that he intended to testify about in court that were

8 | not included in the original report.  When asked what those opinions would be, Mr. Fye claimed that

9 | he would not be able to give that information at the deposition because he did not have his documents

10 | with him. Just like he stated with regards to other individuals, he claimed that he was just making

11 | statements "off the cuff" and that his answers in the deposition were not going to be thorough because

12 | he did not have his notes with him.

13 | Again, Defendants and Mr. Fye completely disregarded their disclosure duty under Rule 26 by

14 | failing to include all of Mr. Fye's opinions in his report and refusing to explain what his opinions

15 | would be because he was wholly unprepared for his deposition.  Any opinions other than what was

16 | expressly contained in Mr. Fye's report regarding the SIU Adjuster, Michelle Bolton, must be

17 | excluded.

18 | **4.**     <u>Any Testimony Regarding Other Individuals Not Contained in His Report Must</u>
<u>be Excluded</u>

19 |

20 | Mr. Fye mentioned that there were ten other depositions that he had flagged and highlighted

21 | that he implied he would be opining on.  However, he refused to discuss them at his deposition

22 | because he was apparently not prepared for such discussions at that point, despite having ample time

23 | to prepare and consult with counsel in advance of his properly-noticed deposition.

24 | Put simply, Mr. Fye must be prohibited at trial from offering any opinions on individuals that

25 | he did include in his expert report, including opinions that he alluded to or testified to during his

26 | deposition.  ALLSTATE has no way of preparing to adequately cross-examine Mr. Fye about

27 | opinions that he never disclosed in the first place, which is the exact situation the expert disclosure

28 | rules are designed to address, and thus these opinions must be excluded.

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
8337 W SUNSET RD, SUITE 350
LAS VEGAS, NV 89113

03246-01555 2791968.1             14             2:12-CV-01288-RCJ-PAL

**MOTION TO EXCLUDE OPINIONS NOT CONTAINED IN EXPERT REPORT AND MOTION FOR
PARTIAL SUMMARY JUDGMENT**

5.      **Any Testimony Regarding the "Generally Available Literature" that Mr. Fye
Listed in His Report But Did Not Produce, Including Any Testimony Regarding
the Book *From Good Hands to Boxing Gloves*, Must Be Excluded**

As discussed above, Fye listed 17 pieces of literature which he supposedly relied upon in drafting his report. However, these documents were only generally referred to in the report by references to "foundational texts listed under Data Considered, above." Additionally, none of these documents were produced to ALLSTATE.

Vague references to more than a dozen books, articles, and other documents are completely insufficient and do not provide Plaintiff with any notice as to the basis for Mr. Fye's opinions. Such inadequate references make it impossible for Plaintiff to adequately prepare to cross-examine Mr. Fye as to information he apparently gleaned from all of these texts.

Specifically, Section G contains quoted material without disclosing where the quote even came from. See Exhibit A at p. 7 ("one author listed above summarized Allstate's claims processes by commenting 'you can get prompt payment or fair payment, but not both.'"). In his deposition testimony, Mr. Fye represented that this quote came from one of the books listed in his list of "general literature" relied upon-the book *From Good Hands to Boxing Gloves*. He then went on to detail other aspects of that book that he did not discuss in his report, such as his opinion that ALLSTSATE's claims processing procedures were basically a "zero-sum game" where the insured is the loser. As pointed out above, Mr. Fye's report does not once mention the term "zero-sum game," nor does it go into any detail about the abovementioned book. This book was never provided to the Plaintiffs, and was not disclosed as a document anticipated to be used at trial. When asked whether the actual document was provided to Plaintiffs, Mr. Fye sneeringly remarked "Let's see. How long would it take to call Amazon and get yourself ten copies of that book?" Exhibit "D" at p. 71:2-3. Similar inappropriate or unprofessional remarks were made throughout the deposition.

Indeed, even if it were ALLSTATE's duty to go out and purchase every book and document that Fye allegedly bases his opinions on, Fye's failure to include what portions of these voluminous documents he refers to is a blatant violation of of FRCP 26(a)(2)(B)'s requirement that the bases for each opinion be included in an expert report. As a result, ALLSTATE asks that any testimony regarding any literature that has neither been provided to ALLSTATE nor specifically discussed in

McCORMICK, BARSTOW
SHEPPARD, WAYTE &
CARRUTH LLP
#337 W SUNSET RD, SUITE 350
LAS VEGAS, NV 89113

03246-01555 2791968.1                    15                    2:12-CV-01288-RCJ-PAL

**MOTION TO EXCLUDE OPINIONS NOT CONTAINED IN EXPERT REPORT AND MOTION FOR
PARTIAL SUMMARY JUDGMENT**

1  the report be excluded for violation of FRCP 26(a)(2)(B)'s requirement that the bases for each opinion

2  be included in an expert report.

3  **6.    Any Line of Testimony Regarding Sections F and G of his Report, or**
   **alternatively, any Reference to McKinsey & Company Documents or Other**
4  **"Documents" Vaguely referenced in Those Sections, Must be Excluded**

5

6  Sections F and G of Mr. Fye's report appear to be based on information gleaned from sources

7  neither identified nor produced. As outlined above, under FRCP 26 an expert's report is required to

8  contain the <u>bases</u> for <u>all</u> opinions contained in the report. These two sections do not provide citations

9  nor the basis for the opinions contained in those sections. Indeed, these sections do not even contain

10 the vague reference to "foundational texts listed above." Instead, the report referred to documents that

11 were not identified as ones he relied upon in creating his report, and were not disclosed or provided to

12 Plaintiffs. For example, these sections refer to documents from McKinsey & Company, such as a

13 *CCPR Implementation Training Manual*, but these documents were not listed as something he relied

14 upon in drafting his report, and were not produced to Plaintiffs, which Mr. Fye admitted in his

15 deposition. Exhibit "D," at p. 63:17-20. In fact, his report does not even clearly identify all of the

16 documents that he is apparently referring to; it merely states that "the documents that show the origins

17 of the CCPR are mainly about claim processes that produce lower claim outcomes..." Such a vague

18 and ambiguous reference to "documents" is not a sufficient basis for an opinion.

19 Like Section F of his report, Section G is equally deficient of any supporting citations that

20 provide the basis for his opinions therein. In addition to quoting materials without identifying the

21 source for those quotations, in Section G Mr. Fye implies that Allstate took the position that it could

22 engage in bad techniques and practices that could result in lawsuits, but that such lawsuits could be

23 "managed." In his deposition testimony he stated that this phrase came from a series of slides and

24 bullet points created by McKinsey & Company that was used to "illustrate various concepts."

25 However, his report does not reference any of these documents, nor has he produced any of these

26 documents.

27 The opinions and statements set forth in sections F and G of Mr. Fye's report are wholly

28 unsupported by any documentation, or "bases" as required by Rule 26. Due to Mr. Fye's failure to

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
8337 W. SUNSET RD. SUITE 350
LAS VEGAS, NV 89113

03246-01555 2791968.1                16                2:12-CV-01288-RCJ-PAL
**MOTION TO EXCLUDE OPINIONS NOT CONTAINED IN EXPERT REPORT AND MOTION FOR**
**PARTIAL SUMMARY JUDGMENT**

1  point to an adequate bases for those opinions and failure to provide the documents he relied on in

2  coming to those conclusions, Mr. Fye should not be permitted to testify with regard to the statements

3  made in either of those sections.

4       If Mr. Fye is allowed to testify on these matters, his testimony should be severely limited, and

5  he should not be allowed to reference the McKinsey & Company documents in any manner, which he

6  failed to list or produce.  Plaintiff cannot prepare to cross-examine Mr. Fye at trial without being

7  provided with adequate information as to his bases for forming his opinions.

8       **7.    Any Other Opinions Not Disclosed in Mr. Fye's Report, Including Narratives
            Regarding "Repressive Claims Handling" by Insurance Companies Generally
9            Must be Excluded**

10

11      Mr. Fye testified in his deposition that he normally testifies with regard to repressive claims

12  handling mechanisms by insurance companies, and that he intended to testify that ALLSTATE has

13  created mechanisms that seek to underpay claims and impose its own rules in a "zero sum game"

14  where the insured is the losing party.  Exhibit "D" at p. 122-123.  Mr. Fye never used the term "zero

15  sum game" in his report, and his deposition testimony with regard to any alleged "repressive claims

16  handling" by ALLSTATE is significantly different than what he outlines in Sections F and G of his

17  report.  In any event, the opinions in those sections were completely devoid of any supporting

18  documentation, and Mr. Fye should not be allowed testify regarding anything related to those sections.

19      Mr. Fye represented that he may have other opinions later that he was "not recalling" on the

20  day of the deposition.  In his deposition, he was only able to provide Plaintiffs with "off the cuff"

21  answers, that he stated he intended to supplement later on.  As discovery has now closed and

22  Defendants have not provided any supplemental reports, Mr. Fye is not now able to generate new

23  opinions that are not contained in his report.

24  **B.    Plaintiff's Will be Severely Prejudiced if Mr. Fye Testifies to Opinions Other Than Those
        Contained in His Report**

25

26      The failure of Mr. Fye to disclose all of the opinions that he intends to testify to severely

27  prejudices ALLSTATE.  Mr. Fye's attempt to reserve the right to come up with more opinions as he

28  pleases puts ALLSTATE in the position of being ambushed by undisclosed evidence at trial.  Such an

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
8337 W SUNSET RD, SUITE 350
LAS VEGAS, NV 89113

03246-01555 2791968.1                    17                    2:12-CV-01288-RCJ-PAL
**MOTION TO EXCLUDE OPINIONS NOT CONTAINED IN EXPERT REPORT AND MOTION FOR
PARTIAL SUMMARY JUDGMENT**

1    ambush gives ALLSTATE no time to prepare to adequately cross-examine Mr. Fye about those

2    opinions, and goes directly against the purpose behind Rule 26's disclosure requirements.

3    Additionally, ALLSTATE's expert rebuttal reports were based upon the information provided in Mr.

4    Fye's report.  Without being provided with the full range of opinions that Mr. Fye intended to testify

5    to, ALLSTATE's experts could not adequately rebut those opinions.

6            Moreover, any opinions testified to in his deposition do not cure the deficits in his report. *See,*

7    *Ciomber v. Cooperative Plus, Inc., supra.* As the court in Ciomber explained:

8                    The purpose of Rule 26(a)(2) is to provide notice to opposing counsel--
                     **before the deposition** --as to what the expert witness will testify, and this
9                    purpose would be completely undermined if parties were allowed to cure
                     deficient reports with later deposition testimony. Allowing parties to cure a
10                   deficient report with later depositions would further undermine a primary
                     goal of Rule 26(a)(2): "to shorten or decrease the need for expert
11                   depositions." After all, the parties' need for expert depositions would
                     increase if they could use deposition testimony to provide information they
12                   should have initially included in their Rule 26(a)(2) report.

13

14       *Ciomber, supra,* at 642.  (emphasis added).

15           Here, the new opinions contained in Fye's deposition testimony cannot cure the fact that those

16   opinions were not contained in his expert report, and cannot act as a substitute for a supplemental

17   report.  ALLSTATE's counsel came to the deposition with the understanding that Mr. Fye had

18   reviewed a certain number of documents listed in the report and that his testimony would be consistent

19   with that report.  ALLSTATE had no inclination that Mr. Fye would be testifying about subjects not

20   even touched upon in his report, or individuals never even mentioned.  The subsequent ambush of a

21   new opinions and statements not contained in his report was extremely prejudicial, and is exactly the

22   type of thing that Rule 26 was intended to prevent.

23           Significantly, Mr. Fye never prepared a supplemental report after receiving more information

24   about the case, and at the time of his deposition had not been asked to draft a supplemental report.  As

25   has already been mentioned, at this point discovery is closed, and Defendant has already prepared its

26   dispositive motions.  Thus, any supplemental report provided later would be untimely, and would not

27   give Plaintiffs adequate time to assess or rebut Mr. Fye's opinions.  For this reason, the sole adequate

28   remedy is excluding the testimony of Mr. Fye as outlined above.

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
8337 W. SUNSET RD. SUITE 350
LAS VEGAS, NV 89113

03246-01555 2791968.1                                   18                              2:12-CV-01288-RCJ-PAL

**MOTION TO EXCLUDE OPINIONS NOT CONTAINED IN EXPERT REPORT AND MOTION FOR
PARTIAL SUMMARY JUDGMENT**

**C.**     <u>In The Absence of Admissible Testimony of Mr. Fye Regarding Mr. Khuraibet's Alleged Breach of Duty, Defendants' Claims Against Mr. Khuraibet Must Be Dismissed</u>

Fye has no admissible opinions regarding Mr. Khuraibet or the standards of care for insurance agents that Mr. Khuraibet allegedly violated. Given this, it is important to note that Mr. Fye is Defendants' *only* expert that purports to have opinions regarding Mr. Khuraibet and the standards of care for an insurance agent that Mr. Khuraibet might have violated; Defendants' only other expert, Elliot Flood, specifically has stated he cannot opine on these topics. Defendants are thus left with no expert testimony regarding the standards of care for an insurance agent, or any expert testimony opining that Mr. Khuraibet might have violated such standards.

As outlined in further detail below, this is fatal to Defendants' counterclaims against Mr. Khuraibet. Under Nevada law, a breach of a professional standard of care, like that of an insurance agent, **must be proven by expert testimony**. Accordingly, Defendants' inability to offer any admissible expert testimony establishing the standard of care that Mr. Khuraibet allegedly violated renders Defendants, as a matter of law, unable to proceed on their claims against Mr. Khuraibet. For the following reasons, these circumstances mandate summary dismissal of all of Defendant's claims against Mr. Khuraibet.

**1.**     <u>Expert Testimony is Required to Establish Breach of an Insurance Agent's Professional Standard of Care</u>

The Nevada Supreme Court has established a clear test for when expert testimony is required to show professional standards of care. "It is well settled that the standard of care must be determined by expert testimony *unless the conduct involved is within the common knowledge of laypersons.*" *Daniel, Mann, Johnson & Mendenhall v. Hilton Hotels Corp.*, 98 Nev. 113, 115, 642 P.2d 1086, 1087 (Nev. 1982) (emphasis added) (*citing Bialer v. St. Mary's Hospital*, 83 Nev. 241, 427 P.2d 957 (Nev. 1967) (Overruled on unrelated grounds by *Woosley v. State Farm Ins. Co.*, 117 Nev. 182, 18 P.3d 317 (Nev. 2001))).

In *Bialer*, the Nevada Supreme Court considered whether the standard of care for a nurse giving a shot required an expert to establish. The Court stated that "it cannot be said that the full

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
8337 W. Sunset Rd. Suite 300
Las Vegas, NV 89113

03246-01555 2791968.1       19       2:12-CV-01288-RCJ-PAL

**MOTION TO EXCLUDE OPINIONS NOT CONTAINED IN EXPERT REPORT AND MOTION FOR PARTIAL SUMMARY JUDGMENT**

spectrum of possible consequences from the giving of a shot are within the layman's common knowledge", and on that basis held that "[a]t least a minimum showing by expert testimony is required that some variance from the recognized standard of care proximately caused the injury." *Bialer*, *supra*, at 243-244. Indeed, the Court's language in *Bialer* shows a strong preference in favor of requiring expert testimony, as *Bialer* required expert testimony simply because the "full spectrum of possible consequences" from a professional's action was unknown to a layperson.

It is clear that expert testimony is required to prove that an insurance agent has violated his standard of professional care. The key inquiry, per the above authority, is whether the conduct and guidelines of an insurance agent are within the common knowledge of laypersons. If not, then an expert witness is required to prove that a particular insurance agent violated his standard of care. This inquiry can also be phrased, using language from *Bialer*, as whether the full spectrum of possible consequences from an insurance agent's actions is known to a layperson.

It is abundantly clear that the required conduct and full spectrum of consequences from an insurance agent's actions is *not* known to a layperson. This is evident from the voluminous and complex statutes that exist which define the law specific to insurance contracts, as well an insurance agent's duties operating in Nevada. Within Title 57 of the Nevada Revised Statutes, entitled "INSURANCE", there is an entire chapter devoted to "CONTRACTS OF INSURANCE", Chapter 687B. Chapter 687B includes specific rules regarding delivery, cancellation, and even how the font on an insurance contract must be typed, to give only a few examples. See, generally, N.R.S. 687B. Chapter 687B is a narrow slice of the laws and standards applicable to those who sell insurance. A cursory glance at this voluminous and complex chapter shows, by any reasonable inquiry, that the contents certainly are not known to a layperson. Pursuant to *Bialer*, the existence of such standards for insurance agents, that are unknown to a layperson, would necessarily require an expert to prove violations of these standards.

Furthermore, the fact that an insurance agent requires a license is clear evidence that the required standards and knowledge of and insurance agent are unknown to the layperson. N.R.S. 683A.201, under the chapter titled "Persons Involved in Sale or Administration of Insurance", states: "[a] person shall not sell, solicit or negotiate insurance in this state for any class of insurance unless

**MOTION TO EXCLUDE OPINIONS NOT CONTAINED IN EXPERT REPORT AND MOTION FOR PARTIAL SUMMARY JUDGMENT**

1 │ the person is licensed for that class of insurance."  Nevada Administrative Code Chapter 683A

2 │ requires specialized education and the passing of an examination prior to being licensed as an

3 │ insurance agent.  NRS 683A.241 provides that the licensing examination will "test knowledge

4 │ concerning the lines of authority for which application is made, the duties and responsibilities of a

5 │ producer and the laws and regulations of this state relating to insurance."  Put simply, an entire

6 │ regulatory and statutory scheme has been put in place by the Nevada legislature to require that

7 │ insurance agents have information *beyond* that of the layperson.  It cannot be said that the full

8 │ spectrum of consequences from an insurance agent's action is within the common knowledge of

9 │ laypersons.  Thus, proving a breach of the standard of care for an insurance agent *must* be determined

10 │ by expert testimony.

11 │     **2.    Defendant Mirkia Has No Admissible Expert Testimony on Which to Base A**
   │            **Claim that Mr. Khuraibet Violated the Applicable Standard of Care**

12 │

13 │         Although expert testimony is an absolute requirement to establish an insurance agent's

14 │ standard of care, Defendants have no admissible expert testimony to offer on this topic.  This lack of

15 │ admissible expert testimony is apparent from a cursory examination of Defendants available experts.

16 │         Starting with the most recent, Defendants provided a rebuttal report by expert Elliot S. Flood.

17 │ While Flood opined of the opinions of ALLSTATE's experts, his report does not include any opinions

18 │ as to Mr. Khuraibet's work as an agent, nor does it include any mention of the standard of care for an

19 │ insurance agent. See Rebuttal Report of Elliot S. Flood, attached hereto as Exhibit "E".  Indeed,

20 │ beyond having no discussion of these topics, Flood's report specifically states that he is *not* opining as

21 │ to these issues. Mr. Flood's report states: "The overall impression made by all the statements in the

22 │ file is that there was some kind of miscommunication between Dr. Mirkia and his Allstate agent.

23 │ Since I am not commenting on the E&O aspects of this case, I will not explore this in detail." See id.

24 │ at p. 6, paragraph 18. The only reference Flood's report has to Mr. Khuraibet is not by name, but as

25 │ "the Allstate agent", and specifically disavows having any opinion on Mr. Khuraibet's actions. Thus,

26 │ Flood's testimony cannot be used at trial to establish the standard of care for an insurance agent at

27 │ trial.

28 │

**MOTION TO EXCLUDE OPINIONS NOT CONTAINED IN EXPERT REPORT AND MOTION FOR
PARTIAL SUMMARY JUDGMENT**

The testimony of Defendants' only other proffered bad faith expert, Gary Fye, has been outlined in detail above. To briefly reiterate, Fye's written report did not even vaguely refer to Mr. Khuraibet. Fye's written report included no opinion on whether Mr. Khuraibet had violated any duties, nor any opinion on any of Mr. Khuraibet's actions. Fye's written report included no discussion of an insurance agent's standard of care. Put simply, Fye's written report includes absolutely no opinions that could in any way be used to establish what Mr. Khuraibet's standard of care was, nor that he violated it. Fye revealed unsupported opinions on Mr. Khuraibet at his deposition for the first time—however, FRCP 26(a)(2)(B) unquestionably mandates that such opinions, undisclosed in any written report, are absolutely inadmissible.

Thus, Defendants are left with one expert who has no opinions on Mr. Khuraibet's alleged breaches of his standard of care, and one expert who has only inadmissible opinions on Mr. Khuraibet's alleged breaches of his standard of care. Put simply, Defendants do not have any experts who can state at trial that Walid Khuraibet did anything wrong. This is fatal to all of Defendants' claims against Mr. Khuraibet and Legacy because, as outlined below, all of these claims contain necessary allegations that require Defendants to establish the standard of care for an insurance agent.

### 3. All of Defendants' Causes of Action Against Mr. Khuraibet and Legacy Require Establishing an Insurance Agent's Professional Standard of Care, and in the Absence of Admissible Expert Testimony Must be Dismissed

Defendants' Second Cause of Action as to Mr. Khuraibet and Legacy is for "Breach of Contract". As part of this counterclaim, Defendants allege that "Mr. Khuraibet and/or Legacy breached obligations to the counterclaimants by, among other things, **failing to properly broker insurance and/or provide accurate insurance information, and/or complete and/or submit the counterclaimants' insurance applications, and/or personal property floater**. See Defendants' Amended Counterclaim And Third Party Complaint, Docket No. 44, ¶ 66. (emphasis added).

Defendants' Third Cause of Action as to Mr. Khuraibet and Legacy is for "Breach of the Implied Covenant of Good Faith and Fair Dealing". As part of this counterclaim, Defendants claim that "Mr. Khuraibet and/or Legacy breached the implied covenant of good faith and fair dealing by, among other things, "failing to **properly** procure insurance", "failing to **properly** complete and submit . . . insurance applications", and "failing to provide **proper** instructions" to Defendants to

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
8337 W. SUNSET RD. SUITE 350
LAS VEGAS, NV 89113

03246-01555 2791968.1

22

2:12-CV-01288-RCJ-PAL

MOTION TO EXCLUDE OPINIONS NOT CONTAINED IN EXPERT REPORT AND MOTION FOR
PARTIAL SUMMARY JUDGMENT

1   submit insurance. See Defendants' Amended Counterclaim And Third Party Complaint, Docket No.

2   44, ¶ 75. (emphasis added).

3       Defendants' Fourth Cause of Action as to Mr. Khuraibet and Legacy is for "Unjust

4   Enrichment". As part of this counterclaim, Defendants allege that Mr. Khuraibet has been unjustly

5   enriched by failing to **"competently"** complete Defendants' insurance application. See Defendants'

6   Amended Counterclaim And Third Party Complaint, Docket No. 44, ¶ 84. (emphasis added).

7       Defendants' Fifth Cause of Action as to Mr. Khuraibet and Legacy is for "Gross Negligence".

8   As part of this counterclaim, Defendants allege that "Mr. Khuraibet owed to the counterclaimants a

9   **professional, extra-contractual duty of care imposed by law as their insurance broker**", which he

10  allegedly breached. See Defendants' Amended Counterclaim And Third Party Complaint, Docket No.

11  44, ¶ 91.

12      Defendants' Sixth Cause of Action as to Mr. Khuraibet and Legacy is for "Negligent

13  Misrepresentation". As part of this counterclaim, Defendants allege that Mr. Khuraibet had "**no**

14  **reasonable basis** for believing" the insurance information he provided. See Defendants' Amended

15  Counterclaim And Third Party Complaint, Docket No. 44, ¶ 119.

16      Defendants' Seventh Cause of Action as to Mr. Khuraibet and Legacy is for "Fraudulent

17  Misrepresentation". As part of this counterclaim, Defendants allege that Mr. Khuraibet "knew or

18  should have known that the counterclaimants' leasing to own could bar them from obtaining adequate

19  coverage and/or coverage at all." See Defendants' Amended Counterclaim And Third Party

20  Complaint, Docket No. 44, ¶ 128.

21      All of the above causes of action necessarily require Defendants to show what Mr. Khuraibet's

22  duties were as an insurance agent in order to prove he in some way deviated from it. Claims that Mr.

23  Khuraibet failed to "properly" or "competently" broker and procure insurance, that he had no

24  "reasonable basis" for taking certain action as an insurance agent, that he "should have known" certain

25  things as an insurance agent, or that he breached his "professional, extra-contractual duty of care

26  imposed by law as their insurance broker", **all require proving the standard of care of an insurance**

27  **agent.** As above, this would require admissible expert testimony on the topic, which Defendants do

28  not have. Accordingly, all of Defendants' claims against Mr. Khuraibet and Legacy (consisting of

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
5337 W. SUNSET RD. SUITE 350
LAS VEGAS, NV 89113

03246-01555 2791968.1                                23                          2:12-CV-01288-RCJ-PAL

MOTION TO EXCLUDE OPINIONS NOT CONTAINED IN EXPERT REPORT AND MOTION FOR
PARTIAL SUMMARY JUDGMENT

1 | Defendants' Second, Third, Fourth, Fifth, Sixth, and Seventh Causes of Action) cannot proceed and

2 | must be dismissed.

3 |
### III.
### CONCLUSION

4 |

5 | Based on the foregoing, Plaintiff ALLSTATE respectfully requests that Defendant's expert

6 | Gary Fye be precluded from offering the above-outlined opinions at trial, and that Defendant's

7 | counterclaims against Walid Khuraibet and Legacy Agency, LLC be dismissed in their entirety.

8 |                                       McCORMICK, BARSTOW, SHEPPARD,
                                          WAYTE & CARRUTH LLP

9 | DATED this 24th day of January, 2014

10 |                            By        //s// Philip A. John
11 |                                      Gordon M. Park, Nevada Bar No. 7124
                                         Philip A. John, Nevada Bar No. 10627
12 |                                      8337 West Sunset Road, Suite 350
                                         Las Vegas, Nevada 89113
13 |

14 |                                      Attorneys for Plaintiff/Counterdefendant Allstate
                                         Property and Casualty Insurance Company, Third-
15 |                                      Party Defendants, Walid Khuraibet and Legacy
                                         Agency, LLC, a Nevada corporation
16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
8337 W. SUNSET RD, SUITE 350
LAS VEGAS, NV 89113

03246-01555 2791968.1                                      24                            2:12-CV-01288-RCJ-PAL
MOTION TO EXCLUDE OPINIONS NOT CONTAINED IN EXPERT REPORT AND MOTION FOR
PARTIAL SUMMARY JUDGMENT

**CERTIFICATE OF SERVICE**

1

2    I hereby certify that on this 24th day of January, 2014, a true and correct copy

3    of **MOTION TO EXCLUDE OPINIONS NOT CONTAINED IN EXPERT**

4    **REPORT AND MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO**

5    **DEFENDANTS'      COUNTERCLAIMS      AGAINST      THIRD-PARTY**

6    **DEFENDANTS WALID KHURAIBET AND LEGACY AGENCY, LLC** was

7    served via the United States District Court CM/ECF system on all parties or persons

8    requiring notice.

9

10                              By   //s// Kristin Thomas

11                                   Kristin Thomas, an Employee of
                                     MCCORMICK,     BARSTOW,     SHEPPARD,
12                                   WAYTE & CARRUTH LLP

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
6337 W. SUNSET RD. SUITE 350
LAS VEGAS, NV 89113

03246-01555 2791968.1                              25                          2:12-CV-01288-RCJ-PAL
MOTION TO EXCLUDE OPINIONS NOT CONTAINED IN EXPERT REPORT AND MOTION FOR
PARTIAL SUMMARY JUDGMENT