# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

ALLSTATE PROPERTY and CASUALTY  )
INSURANCE COMPANY,               )
                                 )
        Plaintiff,          )       2:12-cv-01288-RCJ-PAL
                                 )
    vs.                        )       **ORDER**
                                 )
                                 )
KIARASH MIRKIA, POUPAK ZIAEI, and )
DOES 1-10,                       )
                                 )
        Defendants.         )
_____ )

    This case arises out of an alleged jewelry theft. Plaintiff Allstate Property and Casualty

Insurance Company has filed a motion for partial summary judgment as to Defendant/

Counterclaimants Kiarash Mirkia and Poupak Ziaei's counterclaims for bad faith, breach of the

implied covenant of good faith and fair dealing, unjust enrichment, and unfair claims practices,

(ECF No. 71), which the Court now grants in the entirety. Plaintiff has also filed a motion for

partial summary judgment as to all counterclaims asserted against third-party defendants Walid

Khuraibet and Legacy Agency, LLC, (ECF No. 70), which the Court now denies.

I.    **BACKGROUND**

A.    **Complaint**

    In July 2012, Allstate Property and Casualty Insurance Company ("Allstate") filed a

declaratory relief action in this Court based on diversity jurisdiction against Kiarash Mirkia

("Mirkia") and Poupak Ziaei ("Ziaei"), husband and wife (collectively, "Defendants"). (Compl.,

ECF No. 1, at 1–2). The complaint alleged the following: On December 5, 2011, Mirkia entered

into a residential lease agreement with property owner, Ronell Curtis, to rent real property located at 68 Wildwing Court in Las Vegas, Nevada (the "Property"). (*Id.*). The lease included a "purchase option," which stated that "Tenant reserves the option to purchase the [P]roperty during the duration of the lease for $2,700,000 (or appraised value, whichever is less)." (*Id.*). The lease indicated that Curtis would be filing for Chapter 11 bankruptcy and that all of Mirkia's payments would be paid toward the loan already in default with Bank of America. (*Id.*). On December 16, 2011, Curtis filed a voluntary petition for Chapter 11 bankruptcy. (*Id.*). The lease required Mirkia to obtain renter's insurance. (*Id.* at 3).

In early December 2011, Defendants contacted Allstate agent Walid Khuraibet ("Khuraibet") to procure a homeowner's policy (the "Policy") to provide building and content coverage for the Property. (*Id.*). Mirkia allegedly told Khuraibet "that he and his wife were going to own the new home and were purchasing the home through private financing and that there would be no 'mortgagee' to be named on the policy." (*Id.*). Mirkia then allegedly completed a policy application for a homeowner's policy with additional coverage for scheduled personal property and signed the application in Khuraibet's office on January 6, 2012. (*Id.*). The application stated that "[t]o the best of my knowledge the statements made on this application . . . are true . . . . The Company may recomputed [*sic*] the premium shown if the statements made herein are not true. In the event of any material misrepresentation or concealment made by me or with my knowledge in connection with this application, the Company may deem this binder and any policy issued pursuant to this application, void." (*Id.* at 3–4). Shortly thereafter, Allstate issued Defendants a homeowner's policy with coverage from December 15, 2011 through December 15, 2012. (*Id.* at 3). The Policy included personal property limits of $1,038,104 and

included extended coverage for scheduled personal property with limits of $142,200 for "jewelry" and $46,900 for a "jewelry-gem print." (*Id*.).

On January 10, 2012, Allstate made a physical inspection of the Property. (*Id*. at 4). A field representative interviewed Mirkia, who allegedly "represented himself to be the 'owner' of the [P]roperty, as opposed to a 'tenant' as evidenced from the report." (*Id*.). Mirkia also denied that the property was "rented out" at any time and allegedly represented that he had purchased the home in 2011 for approximately $2,600,000. (*Id*.). In reliance on Mirkia's representations concerning his home ownership, Allstate issued the homeowner's policy. (*Id*.).

On March 1, 2012, Mirkia reported the theft of jewelry and expensive sunglasses, which apparently occurred on January 30, 2012, to Allstate. (*Id*. at 5). Prior to the theft, Defendants terminated their au pair after only two weeks of employment. (*Id.*). They discovered the theft an hour after the au pair left the premises. (*Id.*). The same day, Mirkia reported the theft to the police. (*Id.*). On March 10, 2012, Allstate took Mirkia's examination under oath. (*Id.*). Mirkia allegedly stated that "he was unsure whether or not he had disclosed that he was in possession of the [P]roperty as a tenant under a lease with option to purchase prior to the loss versus representing that he had purchased the home and was the owner of the home." (*Id*.). Based on its investigation, Allstate determined that Mirkia had misrepresented and concealed the true facts and circumstances surrounding his ownership of the Property and denied coverage. (*Id*.).

Allstate asserts two causes of action: In the first, it claims that it is entitled to rescission of the insurance contract. (*Id*. at 6). Specifically, Allstate alleges that it issued the policy in reliance on material false statements, factual misrepresentations, and omissions, which deceived Allstate into accepting the risk at a certain premium. (*Id*.). It further alleges that if it had known

the true facts, it would not have issued the Policy. (*Id*.). Instead, it claims, a properly issued renter's policy would have included different terms, including a different premium and mandatory lower coverage limits for the jewelry. (*Id*.). Accordingly, Allstate contends, it is entitled to rescission of the policy *ab initio*, and it therefore has no contractual duty to indemnify Defendants for the January 30, 2012 theft claim. (*Id*.).

In the second cause of action, Allstate seeks declaratory relief regarding the amount of Defendants' recoverable damages. (*Id*. at 7). Specifically, Allstate requests that, if coverage is owed, the Court issue a declaration as to the amount that Defendants can recover under the Policy. (*Id*.).

## B.   Counterclaims

In November 2012, Defendants filed an answer to the complaint, a counterclaim against Allstate, and a third-party complaint against Walid Khuraibet ("Khuraibet") and Legacy Agency, LLC ("Legacy"). (Answer, ECF No. 16, at 1–8; Countercl., ECF No. 16, at 9–26). The counterclaim and third-party complaint alleged the following: Khuraibet owned Legacy, and, at all relevant times, Khuraibet acted within the course and scope of his agency or employment status with Allstate and Legacy. (*Id*. at 9). Defendants further alleged that Allstate and Legacy were vicariously liable for Khuraibet's conduct and that Khuraibet was the alter ego of Legacy. (*Id*. at 9–10).

The counterclaim further alleged that Defendants Mirkia and Ziaei, doctors, were long-term Allstate customers, who first purchased insurance from Allstate thirteen years earlier, in Chicago, Illinois. (*Id*. at 10). Until recently, Defendants maintained Allstate insurance policies for all of their insurable possessions, including homes, vehicles, and personal property, and, until

recently, they had never made a claim with Allstate. (*Id*.). Defendants relocated to Nevada in 2008. (*Id*.). They promptly contacted a local Allstate agent to procure insurance coverage for their possessions in Nevada. (*Id*.). Defendants initially worked with Jorge Chavez, who later transferred their account to Allstate Agent Khuraibet. (*Id*.). Khuraibet brokered Defendants' insurance accounts for over three years. (*Id*.). During that time, Defendants allege, Khuraibet assisted them in insuring the Property, knowing that they were "leasing to own." (*Id*. at 11). Specifically, Defendants allege that they gave Khuraibet a copy of their lease and that Joseph Yakubik, a third-party, was present in Khuraibet's office when Mirkia presented Khuraibet with the "lease to own" agreement. (*Id*.).

The Counterclaim further alleged that Defendants brought their jewelry from Chicago to Las Vegas. (*Id*.). The jewelry was already protected by a homeowner's policy in Chicago, but Defendants wanted a separate policy for greater coverage. (*Id*.). Khuraibet completed, processed, updated, and submitted the application for the Policy, including a special schedule, or personal property "floater," providing additional, independent coverage for the jewelry. (*Id*.). Khuraibet "falsely indicated on the insurance policy" that Defendants "outright owned their home rather than leased to own it." (*Id*.). Khuraibet had actual knowledge that Defendants leased to own their home because they had given him a copy of the lease and because they were personal friends. (*Id*.). Allstate charged Defendants a $4,796 premium for their personal property floater and a $2,650.93 premium for their homeowner's insurance. (*Id*.). Allstate insured one set of the jewelry for $142,200 and another set for $46,900. (*Id*.).

In January 2012, Defendants hired an au pair through a service called CulturalCare to assist in caring for their two small children. (*Id*.). After a short period of work, the au pair left

Defendant's employment and took some of their jewelry with her. (*Id.*). Within an hour of the au pair leaving, Ziaei discovered the theft, and the couple called the police and filed a report. (*Id.* at 11–12). The police attempted to locate the au pair, but she had apparently left the country. (*Id.* at 12). After failing to locate the au pair, even with the help of CulturalCare, Defendants reported the theft of their jewelry and made a claim with Khuraibet and Allstate. (*Id.*). Allstate initiated an investigation, inspected Defendants' house, and interviewed Defendants separately for several hours. (*Id.*). After several months of "investigation," Allstate informed Defendants that it was denying their claim "based on a purported misrepresentation on [their] insurance policy and/or personal property floater." (*Id.*). According to Defendants, Khuraibet misrepresented to Allstate that they had not informed him they were leasing to own. (*Id.*). Allstate sent a denial letter to Defendants on July 19, 2012, and initiated this lawsuit on the same day. (*Id.*).

Defendants assert nine causes of action: In the first, they claim that Allstate denied their claim in bad faith. (*Id.* at 12). Specifically, they allege that they materially and fully complied with their obligations under the policy and made a valid claim for compensation, which Allstate unreasonably denied. (*Id.*). They further allege that Allstate fabricated its allegation that Defendants failed to disclose their status as renters, in violation of the implied covenant of good faith and fair dealing. (*Id.*). Allstate was aware or should have been aware that the misrepresentation–which Defendants expressly disclaim–was immaterial and did not meaningfully affect the valuation of the insured jewelry or Allstate's decision to underwrite the Policy. (*Id.*). Allstate acted in bad faith by falsely asserting that it would not have insured Defendants had it known they were merely leasing the Property. (*Id.*). Defendants further allege that Allstate acted in bad faith when it failed to disclose the purpose of its investigation and

manipulated Defendants "in an unguarded moment into assisting Allstate in fabricating the falsehood about the doctors lying about the status of the ownership of their home on their homeowners' insurance application." (*Id*. at 14).

In the second cause of action, Defendants assert a claim for breach of contract against Allstate, Khuraibet, and Legacy. (*Id*. at 15). Specifically, they allege that Allstate and Khuraibet breached their contractual obligations by failing to properly complete, submit, and settle Defendants' insurance applications, personal property floater, and insurance claims. (*Id*.). Defendants further allege that Allstate and Legacy are vicariously liable for Khuraibet's wrongful conduct. (*Id*. at 16).

In the third cause of action, Defendants assert a claim for breach of the implied covenant of good faith and fair dealing against Allstate, Khuraibet, and Legacy. (*Id*.). Specifically, Defendants allege that Allstate and Khuraibet breached the implied covenant of good faith and fair dealing by failing to properly complete, submit, and settle Defendants' insurance applications, personal property floater, and insurance claims in good faith. (*Id*.). Defendants further allege that Allstate and Legacy are vicariously liable for Khuraibet's wrongful conduct. (*Id*.).

In the fourth cause of action, Defendants assert a claim of unjust enrichment against Allstate, Khuraibet, and Legacy. (*Id*. at 17). Specifically, they allege that Allstate was unjustly enriched by retaining Defendants' insurance premiums while simultaneously refusing to honor their insurance claim for the stolen jewelry. (*Id*.). They also allege that Khuraibet was unjustly enriched by seeking and retaining a commission for brokering the Policy and floater while simultaneously failing to competently or honestly complete the application, in which he

deliberately omitted or misrepresented his knowledge of Defendants lease-to-own arrangement. (*Id*.). Defendants further allege that Allstate and Legacy are vicariously liable for Khuraibet's wrongful conduct. (*Id*.).

In the fifth cause of action, Defendants assert a claim for gross negligence against Allstate, Khuraibet, and Legacy. (*Id*. at 18). Specifically, they allege that Khuraibet owed Defendants a duty of care as their insurance broker and represented that he would truthfully and accurately complete or update their insurance applications and that Khuraibet breached this duty by failing to accurately disclose their home ownership status. (*Id*.). They also allege that even if they had inaccurately stated that they owned the home on their application, which they deny, Khuraibet had a duty, based on his knowledge as an Allstate agent, to correct the application. (*Id*. at 19). Defendants further allege that Allstate and Legacy are vicariously liable for Khuraibet's conduct. (*Id*. at 20).

In the sixth cause of action, Defendants assert a claim for negligent misrepresentation against Allstate, Khuraibet, and Legacy. (*Id*.). Specifically, they allege that in the course of a business transaction, Khuraibet supplied materially false information by representing to Allstate that Defendants were the outright owners of their home, despite assuring Defendants that he had faithfully represented their personal information. (*Id*. at 21). They also allege that Khuraibet represented that their home ownership status was no bar to their application for the jewelry floater. (*Id*.). Defendants further allege that Allstate and Legacy are vicariously liable for Khuraibet's conduct. (*Id*.).

In the seventh cause of action, Defendants assert a claim for fraudulent misrepresentation against Allstate, Khuraibet, and Legacy. Specifically, they allege that during the course of a

business transaction, Khuraibet knowingly supplied materially false information to Allstate about Defendants' home ownership status. (*Id*. at 22). Defendants further allege that Allstate and Legacy are vicariously liable for Khuraibet's conduct. (*Id*. at 23).

In the eighth cause of action, Defendants asserted alter ego liability against Khuraibet as the owner of Legacy. (*Id*. at 23). Specifically, Defendants alleged that Legacy is a shell and sham corporation without assets, capital, stock, or other shareholders aside from Khuraibet. (*Id*.). They further alleged that the unity of interest and ownership between Khuraibet and Legacy were "inseparable from each other, and adherence to the corporate fiction of a separate entity would sanction fraud or promote a manifest injustice." (*Id*. at 24).

In the ninth cause of action, Defendants assert a claim under Nevada's Unfair Claims Practices Act, NRS §§ 686A.310 and 684A.035, against Allstate, Khuraibet, and Legacy. (*Id*. at 24–25). Specifically, Defendants allege that Allstate resisted a prompt, fair, and equitable settlement of their theft claim, (*id*. at 24), and that Khuraibet negligently, willfully, or recklessly misrepresented their ownership status on the insurance applications, (*id*. at 25). Defendants further allege that Allstate and Legacy are vicariously liable for Khuraibet's conduct. (*Id*.).

C.   **Procedural History**

On March 7, 2013, this Court granted Khuraibet's motion to dismiss. (Order, ECF No. 42, at 16). Specifically, the Court dismissed the following claims asserted against Khuraibet in the third-party complaint: (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing; (8) alter ego liability; and (9) unfair claims practices. (*Id.*). The Court granted leave to amend each of these claims. (*Id.*). On March 28, 2013, Defendants filed their first amended counterclaim and third-party complaint ("FACTPC"). In doing so, they added factual

enhancements to claims two and three, omitted the "claim" for alter ego liability in the entirety, and omitted the unfair claims practices claim as asserted against Khuraibet. (ECF No. 44). The unfair claims practices claim (now listed as the eighth cause of action) remains asserted against Allstate. (*Id.* at 24).

On March 27, 2014, Magistrate Judge Leen granted Allstate's motion to exclude certain expert opinions. (*See* Mins., ECF No. 83). Specifically, Judge Leen entered an oral order prohibiting Defendants' expert, Gary Fye, from offering any expert testimony or opinions regarding Khuraibet or Legacy "which were not disclosed in the [expert] report or supplemented before [Fye's] deposition was taken." (*Id.*).[1] Allstate has now moved for summary judgment as to the following counterclaims: (1) bad faith; (3) breach of the implied covenant of good faith and fair dealing; (4) unjust enrichment; and (8) unfair claims practices. (ECF No. 71). Allstate also moves for summary judgment as to all of Defendants' counterclaims against third-party defendants Khuraibet and Legacy. (ECF No. 70). The Court now considers the pending motions.

## II.   LEGAL STANDARD

In reviewing a motion for summary judgment, the court construes the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). Pursuant to Federal Rule of Civil Procedure 56, a court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are "facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*,

---

[1] Judge Leen ruled on the motion docketed at ECF No. 69, which is substantively identical to the motion to exclude and motion for partial summary judgment docketed at ECF No. 70. Judge Leen did not reach the summary judgment issue, which this Court addresses below, *see supra* Part III.D, and this Court will not revisit Judge Leen's order on the motion to exclude.

477 U.S. 242, 248 (1986). A material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the initial burden of identifying the portions of the pleadings and evidence that the party believes to demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A)-(B). Once the moving party has properly supported the motion, the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Liberty Lobby*, 477 U.S. at 252. The nonmoving party cannot defeat a motion for summary judgment "by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587.

### III.    ANALYSIS

As an initial matter, Defendants' first cause of action, entitled "Bad Faith—Against Allstate," and third cause of action, entitled "Breach of the Implied Covenant of Good Faith and Fair Dealing—Against Allstate, Khuraibet, and Legacy," (*see* FACTPC, ECF No. 44), are actually the same claim. *Vargas v. Cal. State Auto. Assoc. Inter-Ins. Bureau*, 788 F. Supp. 462, 465 (D. Nev. 1992) ("The 'bad faith' cause of action is actually one for breach of an implied covenant of good faith and fair dealing."). Allstate raised this point in its motion, (ECF No. 71, at 13 n.4), and Defendants did not dispute it, (*see generally* Opp'n to Mot. Summ. J., ECF No. 72). Accordingly, the Court will analyze these claims together under the heading "Bad Faith." The Court will then address the causes of action for unfair claims practices and unjust enrichment. Finally, the Court will address Allstate's motion for summary judgment as to all of Defendants' counterclaims against third-party defendants Khuraibet and Legacy.

#### A.    Bad Faith

"An insurer fails to act in good faith when it refuses 'without proper cause' to compensate the insured for a loss covered by the policy." *Pemberton v. Farmers Ins. Exch.*, 858 P.2d 380, 382 (Nev. 1993) (quoting *United States Fid. & Guar. Co. v. Peterson*, 540 P.2d 1070, 1071 (Nev. 1975)). Such conduct is a breach of the covenant of good faith and fair dealing, and constitutes actionable bad faith. *Id.*

"To establish a prima facie case of bad-faith refusal to pay an insurance claim, *the plaintiff must establish that the insurer had no reasonable basis for disputing coverage, and that the insurer knew or recklessly disregarded the fact that there was no reasonable basis for disputing coverage.*" *Powers v. United Servs. Auto. Ass'n*, 962 P.2d 596, 604 (Nev. 1998)

(emphasis added). "The vital element . . . is the insurance company's wrongful conduct, not merely in denying a claim incorrectly and, therefore, without "proper" cause, but in denying the claim wrongfully, without any reasonable basis or with the knowledge that it is denying a rightful claim." *Id.* at 620. To recover punitive damages on a bad faith claim, the plaintiff must show "oppression, fraud, or malice, express or implied." *United Fire Ins. Co. v. McClelland*, 780 P.2d 193, 198 (Nev. 1989) (quoting NRS § 42.010 (now NRS § 42.005)).

Allstate has moved for summary judgment, arguing that there is no genuine dispute of material fact as to whether it had a reasonable basis for denying the theft claim. (Mot. Summ. J., ECF No. 71, at 13–20). Therefore, in order to defeat the motion as to the bad faith claims, Defendants must show that there is, in fact, a genuine dispute as to whether Allstate knowingly or recklessly denied coverage without *any* reasonable basis. Defendants have failed to carry this burden.

Allstate essentially presents two arguments for summary judgment as to the bad faith claims. First, it cites to record evidence of undisputed facts that overwhelmingly demonstrate the existence of a reasonable basis for denying the theft claim. (*Id.* at 7). These undisputed facts include the following: (1) the "alleged loss occurred on the same day in which the alleged thief called the police indicating she was being held against her will by Dr. Mirkia and asked the police to search her bags"; (2) the "alleged loss is not the first time that Dr. Mirkia or his wife have alleged that either their nannies or house-keepers have stolen from them"; (3) the "alleged loss occurred when over $180,000 worth of jewelry was left in an unlocked drawer where an unsupervised nanny had full access"; (4) the "alleged loss occurred just 23 days after the last piece of expensive jewelry was scheduled"; and (5) the "[police detective] assigned to this loss

had suspicions that the loss never actually occurred and suspended his investigation." (*Id.*).

Defendants do not dispute any of these facts in their opposition. (*See* Opp'n, Table of Disputed

Facts, ECF No. 72, at 3). Faced with such undisputed facts, no reasonable jury could conclude

that Allstate lacked any "reasonable basis for disputing coverage, and that [it] knew or recklessly

disregarded the fact that there was no reasonable basis for disputing coverage." *Powers*, 962 P.2d

at 604. Summary judgment on the bad faith claims is therefore appropriate. *Anderson*, 477 U.S.

at 248–52. It may, of course, be the case that Allstate is ultimately found liable under the

insurance contract, but this is irrelevant as to whether Allstate had a reasonable basis for

disputing coverage in the first place. *Powers*, 962 P.2d at 620.

      Furthermore, as Allstate contends in its second argument, the decision to deny coverage

was plainly reasonable under the controlling Nevada statutes. (Mot. Summ. J., ECF No. 71, at

14–20). Specifically, NRS § 687B.110 provides:

> All statements and descriptions in any application for an insurance policy or
> annuity contract, by or in behalf of the insured or annuitant, shall be deemed to be
> representations and not warranties. Misrepresentations, omissions, concealment of
> facts and incorrect statements shall not prevent a recovery under the policy or
> contract unless either:
>
> 1. Fraudulent;
>
> 2. Material either to the acceptance of the risk, or to the hazard assumed by the
> insurer; or
>
> 3. The insurer in good faith would either not have issued the policy or contract, or
> would not have issued it at the same premium rate, or would not have issued a
> policy or contract in as large an amount, or would not have provided coverage
> with respect to the hazard resulting in the loss, if the true facts had been made
> known to the insurer as required either by the application for the policy or
> contract or otherwise.

Defendants do not appear to dispute that Mirkia signed the Policy application, in which he represented that he owned the Property. (*See* Opp'n, Table of Disputed Facts, ECF No. 72, at 3–4, 5).[2] This misrepresentation at least arguably triggers both NRS § 687B.110(2) and (3), meaning that it arguably prevents Defendants from recovering under the Policy. Indeed, Allstate goes to great lengths to demonstrate exactly how ownership status is material to Allstate's acceptance of the risk. Specifically, Allstate provides evidence showing that Allstate's decision to accept certain risks depends on whether an applicant owns or rents the subject property. (*See* Mot. Summ. J., ECF No. 71, at 16–17, (citing Arnett Dep., ECF No. 71-4, at 28)). Defendants do not genuinely dispute this assertion.[3] Therefore, it is at least arguable, if not undisputed, that Allstate could deny coverage under § 687B.110(2). The same is true of NRS § 687B.110(3). Indeed, Allstate has shown that if it had known that Defendants were renters, rather than homeowners, its own risk management policy would have required issuing its renters policy, under which scheduled personal property is subject to a $15,000, per-item coverage limit. (Mot. Summ. J., ECF No. 71, at 8, 19). Under these underwriting guidelines, Allstate could not have insured the expensive jewelry presently at issue. Therefore, it is at least arguable, if not clear, that § 687B.110(3) provides yet another basis for disputing the theft claim.

---

[2] In fact, it appears that Defendants fail to even acknowledge this or any of the other specific instances in which they are alleged to have misrepresented their ownership status. (*See generally* Opp'n, ECF No. 72).

[3] Indeed, Defendants actually concede this issue. In their table of disputed facts, under the column marked for facts they accept, Defendants state that "questions of ownership of the home are material to the homeowners [*sic*] policy . . . ." (Opp'n, Table of Disputed Facts, ECF No. 72, at 4). Of course, Defendants attempt to sidestep the issue by arguing that ownership of the home was not material to the stolen scheduled jewelry. (*Id.*). This, however, is irrelevant. As established by the Nevada Supreme Court in *Randono v. CUNA Mutual Insurance Group*, a misrepresentation or omission need not be related to the loss itself to be considered material for purposes of NRS § 687B.110. 793 P.2d 1324, 1327 (1990).

Defendants' counterarguments are unpersuasive. Indeed, Defendants do not rebut, or even expressly acknowledge, Allstate's argument that it had a reasonable basis to deny the claim. (*See generally* Opp'n, ECF No. 72). Instead, they conflate the legal standard for their breach of contract claims with the legal standard for bad faith. Their argument can be reduced to the following: (1) there is a genuine issue as to whether Khuraibet knew that Defendants were renting the house when he submitted their policy to Allstate, (*id.* at 7–8); (2) there is a genuine issue as to whether Khuraibet was acting as an agent of Allstate, (*id.* at 8–12); (3) If Khuraibet was acting as an agent for Allstate, then any knowledge regarding Defendants' ownership status is imputed to Allstate, (*id.*); and therefore (4) there is a genuine issue as to whether Allstate had constructive knowledge of the misrepresentation such that it could not have denied the policy without acting in bad faith, (*id.* at 8–12, 18). However, even if the Court were to accept the first three premises as true, Defendants' conclusion does not flow from them. Even if a jury ultimately finds that Mirkia told Khuraibet that he was renting the house, that Khuraibet was acting as Allstate's agent, and that this knowledge was imputed to Allstate, this does not change the fact that the undisputed facts of this case, including the suspicious circumstances surrounding the theft, provide multiple arguably justifiable bases for disputing coverage.

Stated another way, accepting Defendants' conclusion would imply that an insurer necessarily acts in bad faith where it denies an arguably suspicious theft claim despite actual or constructive knowledge of an insured's unrelated material misrepresentation. This is not the law. *See Powers*, 962 P.2d at 620. Of course, the factual disputes Defendants describe are almost certainly material to the breach of contract claim; however, Allstate has not moved for summary judgment on that

claim, and the disputed facts are irrelevant to the bad faith claim presently at issue. Allstate is

therefore entitled to summary judgment as to the bad faith claims.


**B.     Unfair Claims Practices**

Nevada's unfair trade practices statute is detailed in NRS § 686A.310. It designates

certain insurance company activities as unfair practices and permits a private right of action by

an insured against an insurer. *See Hart v. Prudential*, 848 F. Supp. 900, 903 (D. Nev. 1994);

*Montes v. Bank of Am.*, No. 2:13-CV-00660-RCJ-VCF, 2014 WL 1494234, at *14 (D. Nev. Apr.

15, 2014). The protections of § 686A.310 are broader than the tort of bad faith and extend to the

processing of the claim. *Pioneer Chlor Alkali Co., Inc. v. Nat'l Union Fire Ins. Co.*, 863 F. Supp.

1237, 1243 (D. Nev. 1994). "Unlike a cause of action for bad faith, the provisions of NRS §

686A.310 'address the manner in which an insurer handles an insured's claim whether or not the

claim is denied.'" *Zurich Am. Ins. Co. v. Coeur Rochester, Inc.*, 720 F. Supp. 2d 1223, 1236 (D.

Nev. 2010) (quoting *Schumacher v. State Farm Fire & Cas. Co.*, 467 F. Supp. 2d 1090, 1095 (D.

Nev. 2006)). NRS § 686A.310(1) includes sixteen subsections, each defining a particular activity

to be an actionable, unfair insurance practice. *First Nat. Bank of Ely v. Progressive Cas. Ins. Co.*,

No. 3:11-CV-00859-RCJ-WGC, 2012 WL 5944847, at *5 (D. Nev. Nov. 27, 2012).

Allstate argues that Defendants have failed to submit any evidence establishing a genuine

issue of material fact as to any of NRS § 686A.310(1)'s sixteen actionable subsections. (Mot.

Summ. J., ECF No. 71, at 21). In response, Defendants argue that the "[a]lthough [they] are not

required to lay out for Allstate all of their evidence in support of their claims for Unfair Claims

Practices, the very existence of expert reports and depositions in which the fairness of Allstate's

claims handling in this case is in dispute shows that genuine issues of material fact exist . . . such that summary judgment is not warranted." (Opp'n, ECF No. 72, at 14). The Court agrees with Allstate and enters summary judgment accordingly.

The defects in Defendants' opposition illustrate a misunderstanding of the legal standards for reviewing a motion for summary judgment. "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment . . . must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 256. Disregarding this standard, Defendants argue that they need not cite specific evidence in support of their claim. (*See* Opp'n, ECF No. 72, at 14–15). This is, of course, incorrect. Roughly speaking, summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Schacht v. Wisconsin Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999).

Consistent with Defendants' mistaken belief regarding their burden on summary judgment, they appear to contend that "the very existence of expert reports and depositions in which the fairness of Allstate's claim handling in this case is in dispute" creates a genuine issue of material fact as to whether Allstate violated one of NRS § 686A.310(1)'s actionable subsections. (*See* Opp'n, ECF No. 72, at 14–15). This is incorrect. *See Liberty Lobby*, 477 U.S. at 254 ("When determining if a genuine factual issue . . . exists . . . , a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability."); *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989) ("*Liberty Lobby* focuses the district court's attention on the 'actual quantum and quality of proof necessary to support liability' at trial. Mere submission of affidavits opposing summary judgment is not

enough; the court must consider whether the evidence presented in the affidavits is of sufficient caliber and quantity to support a jury verdict for the nonmovant. A '*scintilla* of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,' is not sufficient to present a genuine issue as to a material fact." (internal citations omitted)). Quite simply, a court cannot conclude that the mere existence of an expert report or deposition operates as a per se bar to summary judgment. Instead, the court must "consider whether the evidence presented in the affidavits is of sufficient caliber and quantity to support a jury verdict for the nonmovant." *United Steelworkers*, 865 F.2d at 1542. In doing so, the district court is "not required to comb the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). Likewise, the court is "under no obligation to take factual claims made by the parties and fashion them into legal arguments." *Smith v. Marsh*, 194 F.3d 1045, 1052 n.5 (9th Cir. 1999) ("Judges are not like pigs, hunting for truffles buried in briefs."); *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) ("[I]t is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.").

Defendants rely on fleeting references to two expert reports to support their NRS § 686A.310 claim. (*See* Opp'n, ECF No. 72, at 14–19). The first, a rebuttal report offered by putative expert Elliot Flood, is premised on a complete misunderstanding of the applicable Nevada law. Specifically, Mr. Flood assumes, contrary to both NRS § 687B.110(2) and (3), that an insurer must document fraud or concealment in order to void a policy:

> To void the policy, the insurer must prove that the misrepresentation or concealment was willful. Concealment or misrepresentation is considered willful

or intentional when the insured knows that his or her statements are false, swears falsely with reckless disregard of the truth or swears to matters as true when he or she knows little or nothing about the fact. An intent to defraud can be inferred whenever the misrepresentation is *both material and willful*. In contrast, slight or trivial exaggerations, innocent or inadvertent mistakes in [unintelligible], or statements of opinion, made in good faith, regarding the property's value, do not provide the requisite intent to void the policy.

The burden of proving fraud and concealment for the purpose of voiding the policy is on the insurer. When an insurer documents fraud or concealment, the policy can be voided.

(Flood, Rebuttal Report, ECF No. 72-4, at 6). This assumption appears to guide the entire report (*see, e.g.*, *id.* at 7), and it is inconsistent with NRS § 687B.110, which allows an insurer to void a policy for misrepresentations in an application that are *either* fraudulent, material to the acceptance of the risk, or material to the coverage provided or premiums required. *See supra* Part III.A. For this reason alone, the Court cannot conclude that this evidence is of a "sufficient caliber and quantity to support a jury verdict for [Defendants]." *See United Steelworkers*, 865 F.2d at 1542. More importantly, however, Defendants have failed to cite, and the Court cannot find, anything in this report that evinces a violation of any of NRS § 686A.310's specific subsections. (*See* Opp'n, ECF No. 72, at 14–19). Indeed, Defendants do not even attempt to explain how any portion of Mr. Flood's report relates to any actionable conduct under NRS § 686A.310, (*see id.*), and no such relationship is immediately clear from the text of the report, (Flood, Rebuttal Report, ECF No. 72-4, at 3–7). Furthermore, Mr. Flood's own conclusion evidences that his opinions actually relate to the claim for bad faith denial of coverage rather than the claim asserted under NRS § 686A.310:

**Conclusion:** For the reasons stated above, I disagree with Mr. Burkett's opinions concerning Allstate's conduct, since it is my opinion that a reasonable insurer would or should have known that under these circumstances, *it was impossible to establish a reasonable basis for denial for fraudulently* [*sic*]

> misrepresentations. Therefore, I have no choice but to conclude that the claim was
> unreasonably denied and Allstate failed to act in good faith to effectuate a prompt,
> fair, and equitable settlement of the Mirkia claim . . . .

(*Id.* at 7–8) (emphasis added). For these reasons, the Court declines to find that Mr. Flood's rebuttal report establishes a genuine issue of material fact with respect to NRS § 686A.310.

Defendants' second piece of evidence, a report offered by putative expert Gary Fye, is similarly plagued. As with Mr. Flood's report, Defendants do not even attempt to explain how or where this report creates a genuine dispute of fact with respect to conduct actionable under NRS § 686A.310, (*see* Opp'n, ECF No. 72, at 14–19), and the Court cannot see how it does. For example, Mr. Fye's opinion that Allstate should have reformed the policy rather than deny the claim, (Fye, Expert Report, ECF No. 72-3, at 11–12), does not imply that Allstate violated NRS § 686A.310 by choosing another presumably legitimate alternative. The same is seemingly true of Mr. Fye's other findings, (*id.* at 10–12), and Defendants have conspicuously declined to demonstrate otherwise, (*see* Opp'n, ECF No. 72, at 14–19). Therefore, the Court concludes that Defendants have failed to demonstrate the existence of a genuine dispute as to their claim for unfair claims practices under NRS § 686A.310, and Allstate is therefore entitled to summary judgment.

## C.  Unjust Enrichment

Allstate is likewise entitled to summary judgment on the unjust enrichment claim. Defendants attempt to argue that there is a genuine dispute of fact as to premium payments that Allstate allegedly failed to refund after canceling the Policy. However, Defendants again rely on mere conjecture and unsubstantiated allegations. (*See* Opp'n, ECF No. 72, at 17). Indeed, Defendants cite to no evidence that shows that Allstate currently owes the Mirkias any money—

let alone a specific amount. (*Id.*). Instead, they contend that $3,288.18 paid toward a policy covering their previous home was to be credited toward the new policy, but they provide no evidence as to how much of this amount, if any, Allstate currently owes them. In contrast, Allstate asserts that it neither received nor retained any unearned premiums, (Mot. Summ. J., ECF No. 71, at 27), and nothing in the instant record suggests otherwise.

**D.    Counterclaims Asserted Against Walid Khuraibet and Legacy Agency, LLC**

The parties do not dispute that after Judge Leen's order excluding Mr. Fye from offering any expert testimony or opinions regarding Khuraibet or Legacy "[that] were not disclosed in the [expert] report or supplemented before [Fye's] deposition was taken," (Mins., ECF No. 83), Defendants have no experts who can testify as to an insurance agent's professional duty of care, (*see* Mot. Summ. J., ECF No. 70, at 22; Opp'n, ECF No. 73, at 12–17). Accordingly, Allstate argues, Khuraibet is entitled to summary judgment as to all claims asserted against him. (Mot. Summ. J., ECF No. 70, at 19). Defendants disagree, contending that an expert is not a prerequisite for a jury to conclude that their insurance agent, Khuraibet, breached his duty of care. The Court agrees with Defendants, concluding that none of the claims asserted against Khuraibet require evidence of a professional standard of care.

Under Nevada law, "[i]t is well settled that the standard of care must be determined by expert testimony unless the conduct involved is within the common knowledge of laypersons." *Daniel, Mann, Johnson & Mendenhall v. Hilton Hotels Corp.*, 642 P.2d 1086, 1087 (Nev. 1982) (citing *Bialer v. St. Mary's Hospital*, 427 P.2d 957 (Nev. 1967)). However, "where . . . the service rendered does not involve esoteric knowledge or uncertainty that calls for the professional's judgment, it is not beyond the knowledge of the jury to determine the adequacy of

the performance. *Id.* (citing *Aetna Insurance Co. v. Hellmuth, Obata, Kassabaum Inc.*, 392 F.2d 472, 478 (8th Cir. 1968)). This is the so-called "common-knowledge" exception. *Associated Indus. Contractors, Inc. v. Fleming Eng'g, Inc.*, 162 N.C. App. 405, 412 (2004) (examining *Daniel*, 642 P.2d at 1087).

The Nevada Supreme Court has not squarely addressed whether expert testimony is required to establish the professional standard of care applicable to insurance agents. However, after a review of the relevant binding and persuasive authorities, this Court predicts that the Nevada Supreme Court would conclude, under its decision in *Daniel*, 642 P.2d at 1087, that establishing the standard of care for an insurance agent requires expert testimony only where the claim at issue turns on the exercise of professional judgment.[4] Relying on the rationale expressed in *Daniel*, other courts have reached a similar conclusion. *See, e.g.*, *Humiston Grain Co. v. Rowley Interstate Transp. Co., Inc.*, 512 N.W.2d 573, 575 (Iowa 1994). In *Humiston Grain*, the Iowa Supreme Court surveyed the relevant authorities and distilled a sound standard:

> We have not previously addressed the question of whether, or under what circumstances, proof of an insurance agent's negligence must rest on expert testimony. Because insurance agents are professionally engaged in transactions ranging from simple to complex, the requirement of expert testimony varies from jurisdiction to jurisdiction depending on the nature of the alleged negligent act. Lori J. Henkel, Annotation, *Necessity of Expert Testimony to Show Standard of Care in Negligence Action Against Insurance Agent or Broker*, 52 A.L.R.4th 1232, 1234 (1987). At one end of the spectrum are those cases in which an agent negligently fails to procure requested coverage or permits coverage to lapse by failing to advance premiums due. Under these circumstances, commonly understood by laypersons, courts have held that expert testimony regarding the standard of care and its breach is not necessary. *Clary Ins. Agency v. Doyle*, 620 P.2d 194, 200 (Alaska 1980) (no expert testimony required where agent failed to

---

[4] "When interpreting state law, federal courts are bound by decisions of the state's highest court. In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Strother*, 79 F.3d 859, 865 (9th Cir. 1996).

submit insured's premium payment to carrier); *Lowitt v. Pearsall Chem. Corp.*, 242 Md. 245, 255, 219 A.2d 67, 73 (1966) (despite payment of consideration, agent "failed to produce any policy whatsoever"); *Dimarino v. Wishkin*, 195 N. J. Super. 390, 394, 479 A.2d 444, 446 (1984) (no expert testimony needed to establish agent's utter failure to produce coverage or warn of lapse); *Consolidated Sun Ray, Inc. v. Lea*, 401 F.2d 650, 658 (3d Cir. 1968) (agent's "efforts to fulfill contractual obligations palpably insufficient").

At the other end of the spectrum are cases involving the agent's alleged failure to discern coverage gaps or risks of exposure in more complex business transactions. In such cases, courts have required expert testimony to establish the applicable standard of care. *Atwater Creamery Co. v. Western Nat'l Mut. Ins. Co.*, 366 N.W.2d 271, 279 (Minn. 1985) (expert testimony required when issue centers around professional judgment in absence of request for action); *Todd v. Malafronte*, 3 Conn. App. 16, 19, 484 A.2d 463, 466 (1984) (sale of insurance requires specialized knowledge and corresponding proof).

512 N.W.2d at 575.

Analyzing the amended third-party complaint under the *Humiston Grain* standard, this Court concludes that none of the claims asserted against Khuraibet turn on the exercise of an insurance agent's professional judgment. Indeed, even the claim for "gross negligence" ultimately turns on whether Khuraibet knew or should have known of the inaccuracies in Defendants' policy application such that he breached a commonsense standard of care by failing to correct it. Likewise, the claim for negligent misrepresentation turns on a generalized duty to "exercise reasonable care or competence in obtaining or communicating the information." *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1387 (Nev. 1998) (defining the tort of negligent misrepresentation). Therefore, because none of the third-party claims require expert testimony, they each survive the instant motion for summary judgment.

///

///

///

## CONCLUSION

IT IS HEREBY ORDERED that Allstate's partial motion for summary judgment (ECF No. 71) is GRANTED. The Court enters summary judgment in favor of Allstate, Khuraibet, and Legacy on the following counterclaims: (1) bad faith; (3) breach of the implied covenant of good faith and fair dealing; (4) unjust enrichment; and (8) unfair claims practices.

IT IS FURTHER ORDERED that Allstate's partial motion for summary judgment as to the counterclaims asserted against third-party defendants Khuraibet and Legacy (ECF No. 70) is DENIED.

IT IS SO ORDERED.

Dated: _ June 18, 2014

_____
ROBERT C. JONES
United States District Judge